UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 4:21-CV-10009-MARTINEZ-BECERRA

FLORIDA KEYS COMMERCIAL FISHERMAN'S
ASSOCIATION, LLC, et al.

       Plaintiffs,

v.

STATE OF FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION, et al.,

       Defendants.

_____/

## DEFENDANTS' AMENDED MOTION TO DISMISS COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendants STATE OF FLORIDA, FISH AND WILDLIFE CONSERVATION COMMISSION (the "FWC") and ERIC SUTTON in his official capacity as Executive Director of the FWC, by and through their undersigned counsel, file their Amended Motion to Dismiss and in support thereof state as follows:

1. Plaintiffs are a Monroe County commercial fishing LLC and an individual fisherman who filed this 42 U.S.C. § 1983 action alleging that Defendants violated their rights through regulations allowing the harvesting of Florida pompano using gill and entangling nets within the Pompano Endorsement Zone ("PEZ"). The PEZ is an area in federal waters off the Gulf Coast of Florida between Cape Sable in Monroe County and Hurricane Pass in Collier County. F.A.C. 68B-35.005(2)(b).

2. Plaintiffs allege they are seeking declaratory and injunctive relief against the regulations.

3. Defendants filed their Motion to Dismiss on February 25, 2021. (ECF 13-1.) They now amend the Motion to include additional grounds for dismissal.

4. The Complaint should be dismissed for reasons including lack of subject-matter jurisdiction, FWC's immunity, lack of standing, the statute of limitations and failure to state a claim.

5. While leave to amend may be given ordinarily, it should be denied because amendment would be futile. Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004).

## MEMORANDUM OF LAW

### A. Background

Plaintiffs are challenging, or at least referencing, four State regulations: (**a.**) F.A.C. 68B-35.002(10), which defines the PEZ; (**b.**) F.A.C. 68B-35.002(14), which defines the Special Permit Zone, another zone within the EEZ for fishing of permit, a different species;[1] (**c.**) F.A.C. 68B-004,

---

[1] It is unknown why a subsection that applies to a different zone and different species of fish has to do with Plaintiffs' claims. It does not appear again in any subsequent allegation.

which sets out the allowable gear for fishing pompano; and (**d.**) F.A.C. 68B-35.35.004, which sets out regulations for fishing pompano within the PEZ with a pompano endorsement. (ECF 1 at ¶ 5.)

Plaintiffs' claims regarding the fishing of pompano arise from the federal Magnuson-Stevens Fishery Act ("the Magnuson Act"). The Act empowers the federal government through its Regional Management Fishery Councils to create a fishery management plan ("FMP") for those species of marine life within the EEZ that are in need of conservation and management. 16 U.S.C.A. § 1852(h)(1).

Under the Act, states have exclusive jurisdiction to regulate vessels within waters up to three nautical miles from their territorial borders. 16 U.S.C.A. § 1856(a)(2)(C)(i).[2] Beyond those three miles is the federal Exclusive Economic Zone ("EEZ"), which extends 200 nautical miles from the state's border. Proclamation No. 5030, 48 Fed. Reg. 10605 (Mar. 10, 1983). Although the EEZ is federal, the Magnuson Act allows states to regulate vessels within the EEZ under several circumstances, the first of which is applicable here:

> **The fishing vessel is registered under the law of that State, and (i) there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating**; or (ii) the State's laws and regulations are consistent with the fishery management plan and applicable Federal fishing regulations for the fishery in which the vessel is operating.

16 U.S.C.A. § 1856(a)(3)(A) (emphasis added). As Plaintiffs acknowledge, there is no FMP or other federal regulation for Florida pompano. (ECF 1 at ¶ 19.) Therefore, the first clause of § 1856(a)(3)(A) is what governs this case.

As a prerequisite to fish for *any* pompano, a person must have a saltwater products license with a restricted species endorsement. F.A.C. 68B-35.005(1)(a); 68B-35.0035(2)(b). If they do, they can commercially fish for pompano in two ways: with and without a State-issued pompano endorsement.

---

[2] Although the EEZ is generally three nautical miles from a state's territorial border, Florida's border in the Gulf of Mexico extends three leagues, or nine nautical miles, from the coastline. Art. II, § 1(a), Fla. Const.

3

**Without a pompano endorsement** - Persons fishing for pompano in either Florida or federal EEZ waters who do not possess a pompano endorsement are allowed to harvest and land 250 pompano per day using allowable gear (cast nets, hook and line, or beach or haul seine). F.A.C. 68B-350.0035(2)(b). The use of gill and entangling nets—the gear at issue in this case—is prohibited within Florida waters. Art. X, § 16, Fla. Const; (ECF 1 at ¶ 11). Without a pompano endorsement, the simultaneous possession of pompano and a gill or entangling net is illegal in State waters unless the pompano were harvested in federal waters as incidental bycatch while targeting another species. F.A.C. 68B-35.0035(2)(b). If so, the incidental bycatch may not exceed 100 pompano and the vessel must travel directly through State waters without stopping until it reaches its usual place of docking or the licensed wholesale dealer where the catch will be sold. F.A.C. 68B-35.0035(2)(b), 35.004(5)(b).

**With a pompano endorsement** - Persons with a pompano endorsement can harvest an unlimited number of pompano using gill and entangling nets within the PEZ. If the person enters Florida waters the pompano still must be transported and landed in between Cape Sable and Hurricane Pass. F.A.C. 68B-35.005(2)(b).

## B.  <u>Motion to Dismiss Standard</u>

Fed. R. Civ. P. 8(a) requires a "short and plain statement of the facts" in order to "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." While a Complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions … . Factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege facts sufficient to state a claim of relief that is plausible on its face. <u>Id.</u> at 547. A claim is facially plausible if the plaintiff pleads facts allowing the court to draw a reasonable inference that the defendant is liable

for the alleged misconduct. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a "sheer possibility" that a defendant has acted unlawfully. <u>Id.</u> An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. <u>Id.</u> Nor will "'naked assertion[s]' devoid of 'further actual enhancement.'" <u>Id.</u> (quoting <u>Twombly</u> at 557).

When subject-matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. <u>Sweet Pea Marine, Ltd. v. APJ Marine, Inc.</u>, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005). On a facial attack under Rule 12(b)(1), courts "merely … look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." <u>Menchaca v. Chrysler Credit Corp.</u>, 613 F.2d 507, 511 (5th Cir. 1980).

On the other hand, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." <u>Id.</u> A court "is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint." <u>Americopters, LLC v. F.A.A.</u>, 441 F.3d 726, 732 n.4 (9th Cir. 2006) (emphasis in original).

## C.  The FWC has Eleventh Amendment Immunity

It is undisputed that the FWC is an agency of the State of Florida. (ECF 1 at ¶¶ 2, 3); Fla. Stat. § 20.055(d). As an arm of the State, the FWC is immune from any § 1983 claim:

> Section 1983 does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989). Even if a state could consent to suit, Florida has not waived its § 1983 immunity. Fla. Stat. § 768.28(18) provides that only an explicit statutory statement of Eleventh Amendment waiver is sufficient to waive that immunity. No such statutory waiver has been enacted in Florida to suits brought under § 1983 or any other federal statutes. <u>Fin. Healthcare Associates, Inc. v. Pub. Health Trust of Miami-Dade Cnty</u>, 488 F.Supp.2d 1231, 1235-36 (S.D. Fla. 2007) ("In Florida, sovereign immunity is the general rule, not the exception").

Gould v. Fla. Atl. Univ. Bd. of Trs., 10-81210-CIV, 2011 WL 13227893, at *3 (S.D. Fla. June 14, 2011) (internal footnote and parenthetical omitted). See also Taylor v. Dep't of Pub. Safety, 142 F. App'x 373, 374 (11th Cir. 2005) ("The Eleventh Amendment bars suit against a State brought by the State's own citizens. Moreover, state agencies share the same Eleventh Amendment immunity as do States.") (internal citations omitted).

Besides that, the FWC cannot be sued because definitionally, it is not a "person" subject to liability under § 1983. Will, 491 U.S. at 64. See McGinley v. Fla. Dep't of Highway Safety & Motor Vehicles, 438 F. App'x. 754, 756 (11th Cir. 2011) ("But a state or state agency is not a 'person' against whom a § 1983 claim may be brought."), The FWC is both immune and not amenable to suit under § 1983 and must be dismissed from the action.

**D. The Court Lacks Subject-Matter Jurisdiction**

**1. Lack of Standing**

To invoke Article III jurisdiction in this Court, a plaintiff must establish three elements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (internal citations omitted).

As an initial matter, Plaintiff Florida Keys Commercial Fisherman's Association, LLC, ("FKCFA") cannot satisfy any of these elements because it does not exist. Although it is identified in the Complaint as a limited liability corporation, there is no such LLC registered with the Florida Department of Corporations. A search of registered corporations at the Department's Sunbiz website shows the closest match is "The Florida Keys Commercial Fishermen's Association, Inc.," which was

not an LLC and was dissolved nearly 50 years ago. http://search.sunbiz.org/Inquiry/CorporationSearch/ SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=FLORIDAK EYSCOMMERCIALFISHERMEN%207058590&aggregateId=domnp-705859-214d9bbf-5cd6-4978- ad8c-1e0a4bc7afcb.[3]

A Sunbiz search for corporate *fictitious* names does reveal an active "Florida Keys Commercial Fishermen's Association." Beyond the discrepancy between "Fisherm**e**n's" there and "Fisherm**a**n's" here, the fictitious name is registered to a different corporation, Monroe County Commercial Fishermen, Inc., which is also not an LLC and is not named as a Plaintiff or identified anywhere in the Complaint. http://dos.sunbiz.org/scripts/ficidet.exe?action=DETREG&docnum=G12000110483&rdocnum=G060 54900207. If FKCFA is a fictitious name for another entity, Florida law prohibits corporations from representing that fictious names are LLCs, as FKCFA has alleged here. Fla. Stat. § 865.09(14)(d). FKCFA lacks standing because it does not exist or is litigating under a wrong or impermissible name.

Plaintiffs also lack standing because they failed to establish actual injury from the regulations or any causal connection to those regulations. They have barely alleged any facts at all. As examples, they do not allege whether they (or in the Association's case, their members) have ever fished for pompano within the EEZ, PEZ, State waters or anywhere else. They do not allege that they own vessels or that those vessels are registered in Florida. They do not allege whether they have a saltwater products license with a restricted species endorsement allowing them to fish for pompano in the first place. They do not allege whether they have a pompano endorsement, how long they have had the endorsement, or whether

---

[3] The Court may take judicial notice of Sunbiz records on a Motion to Dismiss because they are public records. Memmo v. Direct Supply of Wisc,, Inc., 8:18-CV-879-JSM-JSS, 2018 WL 8244846, at *1 (M.D. Fla. July 6, 2018); Leroy v. Medtronic, Inc., 3:14CV284/MCR/CJK, 2015 WL 4600880, at *5-6 (N.D. Fla. July 29, 2015). Defendants respectfully request that the Court take judicial notice of the Sunbiz records within this Motion.

they have been denied application for one. They do not allege that they have ever been held in violation of any of the regulations, or had any vessel searched or property seized. They do not allege that they have experienced any economic impact because of the regulations. The only time Plaintiffs individually appear *anywhere* within their own allegations is to be introduced in the first paragraph.

The pleading contains little more than recitations of federal and state law followed by conclusory legal statements. To the extent Plaintiffs may allege potential injury to other individuals (e.g., "Florida fishermen"), in the absence of any injury of their own they cannot base standing on a theoretical injury or on injuries that non-parties may suffer. Powers v. Ohio, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). Even in those situations where a party *has* been allowed to litigate in in the interest of others, the litigants themselves "must have suffered an in jury in fact, thus giving [them] a sufficiently concrete interest int eh outcome of the issue in dispute." Id. at 411.

Had Plaintiffs properly alleged an actual injury, they would lack standing because it would not be redressable. Plaintiffs seek to declare the pompano endorsement unconstitutional. Eliminating the endorsement would not mean Plaintiffs could suddenly harvest unlimited pompano anywhere in the EEZ. To the contrary, it would mean that *no* Florida fisherman could harvest unlimited pompano; the limit for everyone would revert to what is established in 68B-35.0035. Put another way, it would not give Plaintiffs any new rights, it would only remove rights given to others. Koch v. Shell Oil Co., 52 F.3d 878,882-83 (10th Cir. 1995) ("Rabon's non-inclusion is not ameliorated by striking down rights given to others, even if we discerned grounds to do so (which we do not). Mr. Koch is really asking us again, in another context, to rewrite rather than strike down the statute. That is not our province.").

Further, if Plaintiffs believe that striking the pompano endorsement would somehow stop the purported "discrimination" in favor of out-of-state vessels, the State could never regulate out-of-

state vessels that do not enter Florida waters. In the absence of an FMP, the Magnuson Act limits regulation within the EEZ to state-registered vessels. 16 U.S.C.A. § 1856(a)(3)(A). Plaintiffs have failed to establish injury or redressability and they lack standing as a result.

## 2.   The Case Presents No Substantial Question of Federal Law

This case is not before the Court on diversity jurisdiction; Defendants are a Florida agency and official, while Plaintiffs are based in Monroe County. Rather, the Complaint purports to raise a federal question. That question arises from Defendants' purported violation of the Magnuson Act. For example, in paragraph 17 Plaintiffs allege:

> The Florida Pompano Rules prohibit Florida vessels from the commercial harvest of pompano from the Gulf of Mexico EEZ (except for the small Pompano Endorsement Zone). This prohibition is in direct conflict with the Magnuson Act which was passed by Congress to promote domestic commercial fishing.

In paragraph 20 they allege:

> If Pompano in the Gulf of Mexico EEZ were overfished or in need of protection, the Magnuson Act requires use of ... "the best scientific information available". 16 USC §1801(c). The Magnuson Act requires that conservation and management shall achieve "the optimum yield from each fishery". 16 USC § 1801(c)

In paragraph 22 they allege:

> The responsibility for developing a fishery management plan for pompano in the Gulf of Mexico EEZ (if one is necessary) rests with the [federal] Gulf of Mexico Fishery Management Council."

Yet in paragraph 19 they allege:

> The Defendant FWC must acknowledge that under the Magnuson Act the Pompano in the Gulf of Mexico EEZ are not "overfished" or in "danger". EEZ pompano are not federally regulated.

In other words, Plaintiffs allege that Florida's regulation of pompano violates the Magnuson Act, while simultaneously alleging the Act does not apply to pompano.

Plaintiffs make similarly contradictory and baffling allegations about the "discriminatory" effect of the regulations. They assert that the regulations have a "discriminatory impact on all Florida

Fishermen because only they are prohibited form the commercial harvest of pompano in the Gulf of Mexico EEZ outside of the Pompano Endorsement Zone." (Id. at ¶ 1.) Yet they also correctly acknowledge that in the absence of an FMP, the Magnuson Act **only** allows states to regulate vessels registered to that state within the EEZ: "The Defendant FWC has no authority under the Magnuson Act to enforce the Florida Pompano Rule against non-Florida vessels outside Florida's territorial waters." (Id. at ¶ 18); 16 U.S.C.A. § 1856(a)(3)(A). In other words, Plaintiffs allege that Defendants should be regulating out-of-state vessels in the EEZ, while simultaneously alleging that Defendants cannot regulate out-of-state vessels in the EEZ.

There is no FMP affirmatively imposing limits Defendants are trying to exceed or affirmatively authorizing activity Defendants are trying to limit. There is simply no federal involvement with pompano *at all* under the Act. On the face of the Complaint, Plaintiff's contradictory allegations undermine the alleged federal question giving rise to the Court's jurisdiction. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

"The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction—the implicated federal issue must be *substantial.*" Dunlap v. G&L Holding Group, Inc., 381 F.3d 1285, 1291–92 (11th Cir. 2004) (emphasis in original). See also Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986) ("The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.").

A substantial federal issue exists if federal law "is an essential element" such that "the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." Mobil Oil Corp. v. Coastal Petroleum Co., 671 F.2d 419, 422 (11th Cir. 1982). The claim

must "really and substantially involve a dispute or controversy respecting the validity, construction or effect of [federal] law." Id. Therefore, a complaint may be dismissed for lack of subject-matter jurisdiction when the federal claim is "plainly unsubstantial." Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105 (1933). See also Nietzke v. Williams, 490 U.S. 319, 327 n.6 (1989); Hagans v. Lavine, 415 U.S. 528, 537 (1974) (insubstantiality "has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit'").

Given that there indisputably is no FMP for Florida pompano, the Magnuson Act does not allow regulation of out-of-state vessels in the EEZ, and the Complaint is rife with conclusory legal assertions, the federal claims are completely without merit. See Kalick v. United States, 35 F. Supp. 3d 639, 646 (D.N.J. 2014), aff'd, 605 F. App'x 108 (3d Cir. 2015) ("A conclusory allegation of federal question jurisdiction, untethered to some plausible federal statutory or constitutional basis, does not suffice to confer subject matter jurisdiction."). By way of comparison, the Court can look to Se. Fisheries Ass'n Inc. v. Martinez, 772 F. Supp. 1263, 1266 (S.D. Fla. 1991), a Magnuson Act case from which Plaintiffs' claims have been re-purposed. In Martinez, the plaintiff prevailed on its constitutional claims against Florida's mackerel regulations expressly because they were found to be in conflict with an existing FMP. Unlike Martinez there is no FMP in this case, yet Plaintiffs have re-alleged the same claims anyway minus the underlying basis for federal jurisdiction.

Plaintiffs' federal claims are insubstantial and without merit. At the same time they invoke the Magnuson Act, they admit the Act's plain language flatly contradicts their allegations. They have pled themselves out of the Court's subject-matter jurisdiction.

**E. Shotgun Pleading**

The Complaint should also be dismissed because it is a shotgun pleading in violation of Fed. R. Civ. P. 8. Shotgun pleadings "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit has identified four types of shotgun pleading. Id. at 1321–23. The Complaint is the third type, "one that commits the sin of not separating into a different count each cause of action or claim for relief." Id. at 1322-23. Plaintiffs cluster several distinct federal claims into Count I: what appears to be an equal protection claim, a supremacy clause claim, a commerce clause claim and a Magnuson Act claim. (ECF 1 at 9.) In putting all of these distinct claims into a single count, Plaintiffs have rendered their Complaint a prohibited shotgun pleading, warranting dismissal.

F. **Statute of Limitations**

Plaintiffs' claims are time-barred. The statute of limitations for a § 1983 claim is determined by a state's residual personal injury statute, which is four years in Florida. Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999). Both the Complaint and the regulations' histories show that the PEZ and pompano endorsement regulations have been in effect since 2001—20 years ago. (ECF 1 at 11.) If FKCFA is the fictitious name of Monroe County Commercial Fisherman, Inc., Sunbiz shows the latter was incorporated in 1990, meaning it existed when the regulations were promulgated. As for Plaintiff Daniels, attached as an exhibit to this Motion is his FWC pompano endorsement renewal from 2011, a decade before this lawsuit was filed.[4] The fact that it was a renewal reflects that he had the endorsement even earlier. Both Plaintiffs would have been aware of the pompano regulations many years before this action's limitation period ran out.

Plaintiffs are seemingly aware of this because they label the regulations a "continuing violation." (ECF 1 at ¶ 25.) That is not how continuing violations work in this Circuit. Present

---

[4] This governmental application is a public record that Defendants respectfully be judicially noticed on this Motion to Dismiss. See, e.g., Omnicomm Corp. v. AT&T Mobility, LLC, No. 1-11-CV-4264-AT, 2013 WL 12247764, at *4 (N.D. Ga. Apr. 22, 2013) (court may take judicial notice of patent application on motion to dismiss); Telesaurus VPC, LLC v. Power, 2009 WL 273295, at *1 n.1 (D. Ariz. Feb. 5, 2009), aff'd in part, rev'd in part on other grounds, 623 F.3d 998 (9th Cir. 2010) (taking judicial notice of application for FCC license).

consequences resulting from a discrete past act do not extend a limitation period: allegations of "continuing *injury*" are not allegations of "wrongful continuing *conduct*." Washington v. Tex. Dep't of Criminal Justice, 653 F. App'x 370, 372 (5th Cir. 2016) (emphasis in original). See also Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1982) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."). Consequently, there is no continuing violation where a reasonably prudent plaintiff would have been able to determine that a violation occurred before the limitation period expired. McGroarty v. Swearingen, 977 F.3d 1302, 1308–09 (11th Cir. 2020); Smith v. Pate, 741 F. App'x 610, 612 (11th Cir. 2018); Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006). Plaintiffs, a commercial fisherman and an LLC for commercial fishing interests, should have known of the purported violations before their limitation period expired.

## G. Failure to State a Claim (Federal Claims)

In general, given the Complaint's lack of factual allegations and abundance of conclusory legal assertions, the pleading constitutes the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" held to be deficient in Iqbal. 556 U.S. at 678. Plaintiffs' repeated assertions of a conflict with the Magnuson Act are simply wrong, as they acknowledge themselves. There is no FMP for Florida pompano that would allow or prohibit any particular activities, and the Act limits state regulation in the EEZ to vessels registered to that state. Chinatown Neighborhood Ass'n v. Harris, 794 F.3d 1136, 1142 (9th Cir. 2015). ("The cases relied upon by the plaintiffs that invalidate state regulations with effects on fishing in the EEZ are unpersuasive because in each case, the invalidated regulations either directly proscribed what federal law affirmatively allowed, or directly banned activity within the EEZ that was legal under federal law.") (internal citations omitted).

With the Act not creating any rights in this case, the only way Plaintiffs could establish their constitutional claims would be to allege some other basis. They fail to do so, instead wholly relying

on the Act and repeating the same claims made in Martinez even though the existence of an FMP was

fully dispositive in that case. There is no other basis Plaintiffs could have alleged because there is no

general constitutional right or entitlement to harvest a particular fish:

> Further, plaintiffs can have no property right in the migratory fish themselves. See
> Douglas v. Seacoast Products, Inc., 431 U.S. 265, 284, 97 S.Ct. 1740, 1751, 52
> L.Ed.2d 304 (1977) ("it is pure fantasy to talk of 'owning' wild fish, birds, or
> animals.") In addition, plaintiffs have no right to fish which implicates property
> interests, nor do they have any legitimate claim of entitlement. While they may have
> an expectation of participation, "a unilateral expectation" of a benefit is insufficient
> to establish a property interest. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct.
> 2701, 2709, 33 L.Ed.2d 548 (1972).

Parravano v. Babbitt, 861 F. Supp. 914, 928 (N.D. Cal. 1994), aff'd, 70 F.3d 539 (9th Cir. 1995).

See also Tlingit & Haida Indians of Alaska v. United States, 389 F.2d 778, 785 (Ct. Cl. 1968) ("Since

the primordial decision in Greer v. Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896), it

has been uniformly held that there is no property right in any private citizen or group to wild game

or to freely-swimming migratory fish in navigable waters.").

　　　　While Plaintiffs claim that the State's pompano regulations are pre-empted by the Act, it is

This lack of any cognizable right to fish for pompano is especially applicable within the EEZ,

where the ability to fish is "a matter of governmental permission, rather than a property right." Am.

Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1380 (Fed. Cir. 2004).  Even if, arguendo,

some common-law right to fish for pompano had actually existed before, it ceased to exist once the

Magnuson Act was enacted. Id. at 1380 ("We are not persuaded by American Pelagic's contention

that there exists a historical common law right to use vessels to fish in the EEZ that was not abrogated

by the Magnuson Act.").

　　　　While Plaintiffs claim that the State's pompano regulations are pre-empted  by the Act, it is

their claim of discriminatory regulation that is pre-empted. The Act's plain language limits Florida's

regulation within the EEZ to those vessels registered within the State. 16 U.S.C.A. § 1856(a)(3).

Plaintiffs nonetheless assert that Defendants should be regulating out-of-state vessels in the EEZ.

The Court cannot bring out-of-state vessels under Florida jurisdiction in violation of the Act. Se. Fisheries Ass'n, Inc. v. Mosbacher, 773 F. Supp. 435, 441 (D.D.C. 1991) ("Additionally, the regulations require compliance with state laws, even if a vessel is not registered in the state where the catch is landed. Thus, the regulations go beyond what is authorized by the [Magnuson Act]. *See* 16 U.S.C.A. § 1856(a)(3).").

### 1.  **Equal Protection**

There are other reasons why Plaintiffs have failed to state a claim. The federal claims in the Complaint are not clearly delineated, but it appears they are alleging a violation of equal protection, federal pre-emption and violation of the commerce clause. First is what is apparently intended to be a facial equal protection claim. They assert that the pompano regulations "discriminate" against Florida citizens and vessels because only they are "prohibited from harvesting pompano from the Gulf of Mexico EEZ without a 'Pompano Endorsement.'" (ECF 1 at ¶ 16.) They also allege that the requirement to land PEZ-harvested pompano within the area between Cape Sable and Hurricane Pass "discriminates" against Florida citizens and vessels because it only applies to them.  (Id. at ¶ 23.) Plaintiffs are factually wrong in asserting that no pompano can be harvested at all within the PEZ without a pompano endorsement. A person can still harvest and land up to 250 pompano each day within the EEZ using allowable gear. F.A.C. 68B-350.0035(2)(b).

As with all of Plaintiffs' federal claims, the equal protection claim is taken directly from Martinez. The existing FMP in that case authorized anyone to harvest a certain amount of mackerel within the EEZ, but Florida limited its citizens to less than that amount, a conflict found to be discriminatory. Should it need to be repeated, there is no FMP for pompano in this case and thus no state/federal conflict that could be discriminatory, yet Plaintiffs have re-alleged the claim from Martinez anyway.

If none of these other fatal defects existed, Plaintiffs still could not establish a facial equal protection claim. "Florida citizens" or "Florida fishermen" as alleged in the Complaint are not a suspect class. <u>Fields v. Legacy Health Sys.</u>, 413 f.3d 943, 955 (9th Cir. 2005) (no suspect class where government act does not classify persons "based on protected characteristics, such as race, alienage, national origin, or sex"). <u>See, e.g.</u>, <u>United States v. Cohen</u>, 733 F.2d 128, 135 (D.C. Cir. 1984) (residents of Washington, D.C., are not a protected class). Nor do the regulations involve a fundamental right. <u>Mulero-Carrillo v. Roman-Hernandez</u>, 790 F.3d 99, 107 (1st Cir. 2015) (right to make a living is not a fundamental right); <u>Sisk v. Texas Parks & Wildlife Dep't</u>, 644 F.2d 1056, 1058 n.5 (5th Cir. 1981) (fishing "is not a fundamental right nor is the class of commercial fishermen a suspect class"); <u>Wakulla Commercial Fishermen' Ass'n, Inc. v. Fla. Fish & Wildlife Conservation Com'n</u>, 951 So. 2d 8, 9-10 (Fla. 1st DCA 2007) (regulations on permissible netting "do not involve a suspect class or a fundamental right"). This means the pompano regulations must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." <u>FCC v. Beach Commc'ns, Inc.</u>, 508 U.S. 307, 313 (1993).

The purpose of the pompano regulations is stated within F.A.C. 68B-35.001(1): "The purpose and intent of this chapter are to protect and conserve Florida's pompan … NS assure the continuing health and abundance of these species." F.A.C. 68B-35.001(1). The purpose of the PEZ and pompano endorsement is elaborated further in the exhibit attached to Plaintiffs' Complaint:

> In early 2000, the Commission received reports of illegal gillnetting of Florida pompano in state waters. Since gill nets are an allowable gear in federal waters, illegal state waters harvest was difficult to distinguish from legal federal fisheries activities. In order to address this, FWC created the Pompano Endorsement Zone (PEZ), which is the only area in the state that had a legal, federal waters Florida pompano gill net fishery verified by observer ride-alongs.

> The Pompano Endorsement (PE) allows commercial fishermen to use gill and entangling nets to catch Florida pompano in federal waters, but only inside the Pompano Endorsement Zone, which does not include state waters. … PE holders may take an unlimited amount of Florida pompano in this zone and must land the fish between

> Hurricane Pass in Collier County and Cape Sable in Monroe County. A PE cannot be held by any harvester who has been found to have violated the Net Limitation Amendment or associated gill net rules within the previous three license years.

(ECF 1 at 11.)[5] The need to prevent overfishing of pompano provides a rational basis for the State to allow gill nets in a designated zone of the EEZ in order to avoid widespread circumvention of its gill net ban elsewhere. See, e.g., Solis v. Miles, 524 F. Supp. 1069, 1078 (S.D. Tex. 1981) ("The regulations do not directly affect or protect Texas redfish and speckled sea trout populations except insofar as they aid in the enforcement of the ban on commercial fishing. By regulating the importation and sale of redfish and speckled sea trout, the state seeks to prevent circumvention of its law. This is a legitimate state interest."). As for the requirement to land the pompano within the PEZ, this is necessary because the simultaneous possession in State waters of pompano and a gill or entangling net could be illegal otherwise. F.A.C. 68B-35.0035(2)(b).

Under the Magnuson Act the State has no power to regulate out-of-state vessels that harvest pompano within the EEZ beyond State waters. Plaintiffs essentially claim that because of this, the State should not bother regulating the harvesting of pompano *at all* or else it will disadvantage those individuals the State *can* regulate. Florida cannot be made to adopt this "all or none" position. Plaintiffs are free to disagree with the regulations or to insist they do not satisfy the stated purpose, but that does not defeat the Defendants' rational basis. Beatie v. City of New York, 123 F.3d 707, 712-13 (2d Cir. 1997) ("We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, because the problem could have been better addressed in some other way, or because the statute's classifications lack razor-sharp precision.

---

[5] Gill nets are banned in Florida waters to protect marine animals "from unnecessary killing, overfishing and waste." Art. X, § 16, Fla. Const. This has been held to be a rational basis for the constitutional ban on gill nets. Lane v. Chiles, 698 So. 2d 260, 263 (Fla. 1997)

Nor will a statute be overturned on the basis that no empirical evidence supports the assumptions underlying the legislative choice."). Plaintiffs cannot state an equal protection claim for all the reasons stated above. That claim must be dismissed from the Complaint.

### 2. **Supremacy Clause**

Next, Plaintiffs make a claim of pre-emption under the Magnuson Act, (ECF 1 at ¶ 17), an erroneous assertion that has been addressed above in the subject-matter jurisdiction section. To reiterate, there can be no pre-emption because the federal government has not completely occupied the regulation of Florida pompano. As Plaintiffs admit, there is no FMP or federal regulation of pompano, so there is nothing that could pre-empt the State's regulations. On the other hand, the Magnuson Act *does* pre-empt any effort to regulate out-of-state vessels within the PEZ despite Plaintiffs' insistence that Defendants do so. Plaintiffs' pre-emption claim is without merit and must be dismissed.

### 3. **Commerce Clause**

Plaintiffs assert that the pompano regulations violate the commerce clause because of the requirement that vessels harvesting pompano in the PEZ and traveling through State waters must land the pompano within the PEZ, between Cape Sable and Hurricane Pass. (ECF 1 at 9.) No economic protectionism is at issue here. Philadelphia v. New Jersey, 437 U.S. 617 (1978). Plaintiffs concede that in-state and out-of-state vessels are both subject to this requirement, alleging that regulations seek "to prohibit out of state vessels (**and** Florida registered vessels) from using any port" outside the PEZ to land pompano. (ECF 1 at 9) (emphasis added).

Nor do the regulations impose any unintentional but unreasonable burden on interstate commerce. In fact, the few allegations Plaintiffs have pled do not establish any interstate commerce issue at all. Their chief complaint is that Florida pompano are only permitted to be landed within too narrow an area, between Cape Sable and Hurricane Pass. There are no allegations of how this affects interstate commerce, or why expanding a landing area *within the same state* would be an interstate

rather than an intrastate issue.

Contrast the present case with <u>Martinez</u>, from which this claim is taken. There, Florida's limit on mackerel was found to violate Congress's commerce power that it exercised through an FMP allowing for a greater number. 772 F. Supp. at 1267. There has been no similar exercise of the commerce power with regard to Florida pompano, and Plaintiffs' "bare bones allegations and threadbare recitals of a claim" under the commerce clause fail to state a violation. <u>Incredible Invs.,</u> <u>LLC v. Fernandez-Rundle</u>, 28 F. Supp. 3d 1272, 1288–89 (S.D. Fla. 2014). This claim must be dismissed from the action.

### 4.   <u>Privileges and Immunities Clause</u>

Finally, early in the Complaint Plaintiffs allege the action is brought under the privilege and immunities clause, (ECF 1 at ¶ 3), but this is not raied again in the pleading and the elements are not alleged. <u>Salem Blue Collar Workers Ass'n v. City of Salem</u>, 33 F.3d 265, 268 (3d Cir. 1994) (elements of privileges and immunities claim are burden of "fundamental" right protected by clause, and if so, whether there are "substantial reasons" for discrimination and "whether the degree of discrimination bears a close relation to them") (quoting <u>Toomer v. Witsell</u>, 334 U.S. 385, 396 (1948)). Nonetheless, Defendants will address it in case the Court construes the Complaint differently.

As set out in the equal protection section above, there is no fundamental right to fish for pompano, which precludes a privileges and immunities claim. On top of that, FKCFA cannot bring this claim because an entity is not a "citizen" entitled to privileges or immunities under the clause. <u>Hague v. Com'tee for Indus. Org.</u>, 307 U.S. 496, 514 (1939) ("Natural persons, and they alone, are entitled to the privileges and immunities which Section 1 of the Fourteenth Amendment secures for 'citizens of the United States."); <u>L.S.T., Inc. v. Crow</u>, 49 F.3d 679, 683 n.6 (11th Cir. 1995) ("A corporation is not a 'citizen' entitled to the privileges and immunities secured by federal law for purposes of § 1983.") (citing <u>Hague</u>).

**5. Injunctive Relief**

Count II is addressed in the next section. Plaintiffs' Count III is for an injunction against the pompano regulations. (ECF 1 at 10.) This claim must be dismissed because it is not a claim at all. An injunction is a remedy, not a standalone cause of action. NuTek Int'l, Inc. v. Moxley-W., 3:13-CV-494-J-34PDB, 2014 WL 12623811, at *8 n.9 (M.D. Fla. Mar. 26, 2014) (citing Alabama v. U.S. Army Corp of Eng'rs, 424 F.3d 1117, 1127 (11th Cir. 20005)). Aside from that, Plaintiffs have not alleged any of the elements for injunctive relief anywhere in the Complaint.

**H.   The Court Should Decline Supplemental Jurisdiction Over Plaintiffs' State-Law Claim**

Plaintiffs' Count II is a due process claim under Florida's Constitution. (ECF 1 at 8-9.) The allegations repeatedly assert that Defendants have not followed statutory "Policy and Standards." (Id. at ¶¶ 20, 21, 28.) If the federal claims are dismissed, the Court should decline supplemental jurisdiction over this state-law claim. Under 28 § 1367(c)(3), district courts "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." The Court should do so here.

**I.   Failure to State a Claim (State-Law Claim)**

If instead the Court retains jurisdiction over the state-law due process claim, it should be dismissed for failure to state a cause of action. First, it should be pointed out that the statute Plaintiffs rely on as the basis for their claim, Fla. Stat. § 379.2401, does not appear to create any actionable rights or private cause of action. Second, the claim fails because the statute cannot mandate that the FWC regulate wildlife in a particular way. The FWC is not merely an executive agency; it is a *constitutional* agency with the exclusive authority to regulate fish and wildlife. Art. IV, § 9, Fla. Const.  Its regulations are controlling over statutes that may conflict with its powers. Airboat Ass'n of Fla., Inc. v. Fla. Game & Fresh Water Fish Com'n, 498 So. 2d 629, 631 (Fla. 3d DCA 1986) ("It has consistently been held that the Commission is vested with exclusive legislative authority to adopt reasonable rules to

regulate game and fresh water fishing in this state, and that the legislature is constitutionally prohibited from adopting statutes in conflict with such rules."). See also City of Miramar v. Bain, 429 So. 2d 40, 42 (Fla. 4th DCA 1983).

Plaintiffs cannot assert that a due process violation results from some purported conflict between the regulations and Fla. Stat. § 379.2401. If a conflict actually did exist, the regulations would prevail over the statute. Had Plaintiffs tried to allege a Florida due process claim without invoking § 379.2401, it would make no difference. The regulations would only require a rational basis because the harvesting of pompano involves no protected class and no fundamental rights. See Wakulla Commercial Fishermen's Ass'n, Inc., 951 So. 2d at 9. Defendants have explained the purpose of the regulations above. Their interest in preventing overfishing and illegal gill-netting provides a rational basis sufficient to defeat a Florida due process claim.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed via CM/ECF and served upon David Paul Horan, Esq. at david@horan.law this 19th day of April 2021.

Respectfully Submitted,

ASHLEY BROOKE MOODY
ATTORNEY GENERAL

Shane Weaver
SHANE WEAVER, ESQ.
Senior Assistant Attorney General
Florida Bar No. 907421
Office of the Attorney General
1515 N. Flagler, Suite 900
West Palm Beach, Florida 33401
Tel. (561) 268-5216
Fax (561) 837-5102
shane.weaver@myfloridalegal.com

RHONDA E. PARNELL, ESQ.
Assistant General Counsel
Florida Fish and Wildlife Conservation
Commission
Florida Bar No. 535249
620 South Meridian Street
Tallahassee, Florida 32399-1600
Tel. (850) 487-1764
Fax (850) 487-1790
Rhonda.Parnell@myfwc.com