**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Key West Division

CASE NO. 4:21-cv-10009

TIM RANDOLPH DANIELS,

      Plaintiffs

v.

STATE OF FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION INDIVIDUAL
MEMBERS IN THEIR OFFICIAL CAPACITIES
and ERIC SUTTON, EXECUTIVE DIRECTOR OF
THE FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION
IN HIS OFFICIAL CAPACITY

      Defendants.
_____/

**AMENDED COMPLAINT IN ACTION TO ENJOIN ENFORCEMENT OF THE
DEFENDANTS' REGULATION OF POMPANO HARVEST
IN THE GULF OF MEXICO EXCLUSIVE ECONOMIC ZONE**

Plaintiff, TIM RANDOLPH DANIELS (Daniels), by and through his undersigned counsel file this Amended Complaint against the Individual Members of the State of Florida Fish and Wildlife Conservation Commission in their official capacities and ERIC SUTTON, Executive Director of the Florida Fish and Wildlife Conservation Commission in his official capacity (hereinafter "Defendants) and state as follows:

    1.    Plaintiff Daniels is a Florida resident, citizen of the United States of America and a commercial fisherman and member of the Monroe County Commercial Fishermen

Association, Inc. (230 paid members composed of commercial fishermen who primarily reside in Monroe County, Florida). Plaintiff brings this action pursuant to 42 USC §1983, for the violation of civil rights under color of state law.

2. The Florida Fish and Wildlife Conservation Commission (FWC), is made up of seven (7) members appointed by the Governor and confirmed by the Florida Senate. The individual members are: Rodney Barreto, Robert A. Spottswood, Steven Hudson, Gary Nicklaus, Gary Lester, Sonya Rood, and Michael W. Sole. Plaintiff Daniels is seeking declaratory and injunctive relief against the seven commission members in their official capacities and Eric Sutton, the Executive Director of the FWC in his official capacity, hereinafter "Defendants".

3. This is an action for violation of Plaintiff's constitutional rights and to redress the deprivation of privileges or immunities secured to Plaintiff by the United States Constitution and/or by an Act of Congress. This action is for injunctive and declaratory relief and jurisdiction is proper in the District Court for Southern District of Florida (Key West Division) under 28 USC §1331, 1343, 42 USC §1983.

4. On April 14th, 2020, Plaintiff, Tim Randolph Daniels, owner of the F/V LADY DO 643730 (a Florida Registered Vessel) was stopped, boarded, searched and Daniels was arrested by Florida Fish and Wildlife conservation Commission Officer Ryan Trueblood. Plaintiff was in the Gulf of Mexico Exclusive Economic Zone harvesting a federal fishery species (pompano) with a gill/entangling net. A copy of the Plaintiff's Arrest (Incident Summary Report) is attached hereto and made a part hereof as Exhibit "A".

GENERAL ALLEGATIONS

5. The FWC presently enforces various Florida administrative rules that seek to control the commercial harvest of pompano from the Gulf of Mexico Exclusive Economic Zone. These rules include:

   a. Rule 68B-35.002(10) F.A.C. the "Pompano Endorsement Zone" (PEZ)

   b. Rule 68B-35.005 F.A.C. the "Pompano Endorsement Regulations"

   These Administrative Regulations do not involve any pompano harvest from the territorial waters of the State of Florida.

6. Although the challenged laws are agency rules, the FWC unique constitutional status furnishes such rules legislative authority. See *Airboat Association of Florida v. Fla. Game and Freshwater Fish Comm'n*, 498 So.2d 629 (Fla. 3rd DCA 1986)

7. FWC has the statutory authority to promulgate administrative rules concerning net fishing within Florida territorial waters pursuant to Sections 379.2401 and 379.2422 Florida Statutes by the authority expressly given by the Florida Constitution. Attempting to use this authority, the FWC promulgated fishery management regulations for the federal harvest of pompano from the Gulf of Mexico EEZ.

8. The policies and standards found in the Magnuson Fishery Management Act (16 USC§1851 et. seq. – Magnuson Act) provide <u>exclusive</u> federal fishery management to <u>all</u> fish in the United States EEZ. The Magnuson Act does not allow State fishery management in the United States EEZ unless the State is expressly authorized/delegated management of an EEZ fishery through a Magnuson Act Fishery Management Plan.

9. Despite the Florida Constitutional prohibition of gill nets or entangling nets (in Florida waters), the FWC passed the "State Pompano Regulations" that purport to allow gill nets and entangling nets for the <u>unlimited</u> harvest of Gulf of Mexico EEZ pompano by Florida registered vessels. (See paragraph 5 above).

10. These two state fishery management "zones" are located entirely within the Gulf of Mexico Exclusive Economic Zone (EEZ). In one of these state fishery management EEZ "zones", the catch of pompano (using gill and entangling nets) is <u>totally unlimited</u>. In the adjacent state fishery management EEZ "zone", all Florida registered vessels and fishermen are <u>prohibited</u> from using gill and entangling nets for the commercial harvest of pompano.

11. There is no federal law (Magnuson Act) or regulation that restricts the use of gill or entangling nets to harvest pompano in the United States EEZ.

12. The Florida fishery management rules for pompano harvest in the Gulf EEZ prohibit Florida registered vessels from using such nets without a State "Pompano Endorsement". The area of the Gulf of Mexico EEZ where Florida fishermen (with a "Pompano Endorsement") are allowed to harvest Gulf of Mexico EEZ pompano using gill and entangling nets is <u>extremely</u> restricted. Attached as Exhibit "B" is a chart published by the FWC depicting the Pompano Endorsement Zone (PEZ).

13. The Florida fishery management rules for Florida registered vessels prohibit the commercial harvest of federal pompano from the Gulf of Mexico EEZ outside of the Pompano Endorsement Zone restricting the ability for a majority of Florida's commercial fishermen from economically harvesting pompano from the EEZ.

14. Because only Florida registered vessels are prohibited from harvesting pompano from the Gulf of Mexico EEZ without a "Pompano Endorsement", the Florida Pompano fishery management rules have a discriminatory impact on all Florida registered vessels because only they are prohibited from the commercial harvest of federal pompano in the Gulf of Mexico EEZ north or south of the Pompano Endorsement Zone (PEZ) where fishing remains cost effective.

15. The Florida pompano fishery management rules are preempted by the Supremacy Clause of the United States Constitution (Article VI, Cl. 2) and are contrary to the Magnuson Act's exclusive fishery management authority. The Florida Pompano fishery management rules prohibit Florida vessels from the commercial harvest of federal EEZ pompano (except for the small PEZ). This prohibition is in direct conflict with the Magnuson Act which was passed by Congress to <u>promote</u> domestic commercial fishing.

16. The Florida Pompano fishery management rules are being applied <u>only</u> to Florida registered vessels in the Gulf of Mexico EEZ.

17. The Defendants attempt to justify the State's extraterritorial fishery management regulation of the pompano harvest by relying on a specific sentence in the Magnuson Act, 16 U.S.C.§1856(a)(3). The Defendants have no authority under the Magnuson Act to enforce the Florida Pompano fishery management rules against any Florida or non-Florida vessels outside Florida's territorial waters.

18. If pompano in the Gulf of Mexico EEZ are to be regulated under any fishery management plan, the Magnuson Act <u>requires</u> use of . . . "the best scientific information available". 16 USC §1801(c). The Magnuson Act also requires that

conservation and management of all EEZ fisheries shall achieve "the optimum yield from each fishery". 16 USC §1851(1).

19. The Magnuson Act requires that fishery management regulations "shall be fair and equitable". 16 U.S.C. §1851(a)(4)(C)  Allowing Florida registered vessels the unlimited harvest of pompano from the Gulf of Mexico EEZ (from a very small area of the Gulf of Mexico EEZ) is not "fair and equitable" to anybody.

20. The exclusive responsibility for developing a fishery management plan for pompano in the Gulf of Mexico EEZ rests with the Gulf of Mexico Fishery Management Council. 16 USC§1852.

21. The Florida Pompano fishery management rules also discriminate against Florida registered vessels because the pompano "landing requirement", for EEZ pompano only applies to Florida registered vessels.

22. The Florida Pompano fishery management rules only allow the landing of pompano harvested by Florida vessels from the Pompano Endorsement Zone of the Gulf of Mexico EEZ . . . "within the boundaries of the Pompano Endorsement Zone" (south of Hurricane Pass and North of Cape Sable). See Exhibit "B".

23. The Florida Pompano fishery management rule actually results in a small fish house in Everglades City being the <u>only</u> place that pompano commercially harvested from the Gulf of Mexico EEZ can be legally landed by Florida registered vessels. This is a State enforced monopoly and is not "fair nor equitable" to any United States fishing vessels. See Rule 68B-35.005(2)(B) F.A.C.

**CASE LAW**

24. The Magnuson Act and its exclusive control of federal fishery resources of the United States Exclusive Economic zone has not changed for many years. In *Southeastern Fisheries v. State of Florida*, 453 So.2d 1351 (Fla. 1984), the Florida Supreme Court quoted a 1984 Federal District Court decision in *Bethel v. Florida*, 453 So.2d at 1355 "The State's authority to regulate in the EEZ is only by the consent and acquiescence of the federal government."

25. In *Bateman v. Gardner*, 716 F.Supp. 575 (S.D. Fla. 1989), Aff'd 922 F.2d 847 (11TH Cir. 1990) Chief Judge King ruled on a case very similar to this case. Shrimping was allowed in the EEZ under a federal FMP, but Florida prohibited Florida fishermen from doing so. "Florida acknowledges that it has no authority under the Magnuson Act to enforce Florida Statutes against non-Floridians outside the State's territorial waters." See 716 F.Supp. at 597. Chief Judge King struck down the Florida Statute prohibiting shrimping in the EEZ on Constitutional grounds (Equal Protection, Supremacy Clause, and Commerce Clause). The Court ruled on page 598:

> "The Florida legislature used discretion given to them by the Magnuson Act and prohibited its own shrimpers from the federal area. The net effect of Florida's action was discrimination against its own citizens for only they were prohibited from portions of the federal area".

26. In *Southeastern Fisheries Association, Inc. v. Martinez*, 772 F.Supp. 1263, 1266 (S.D. Fla 1991), Chief Judge King ruled:

> "Under the State's interpretation of Chapter 46-23, commercial fishing vessels registered in other states and based in Florieda may enter the EEZ, catch their federal limit and legally return to port. It is neither fair nor equitable to allow boats registered in other states to keep the benefits the Magnuson Act opens to them while Florida vessels face criminal charges for the same conduct."

27. Judge King's finding of Florida's unconstitutional interference with Equal Protection, Commerce and Supremacy Clauses was appealed.

28. Judge Peter Fay's Opinion in *Southeastern Fisheries Assn v. Chiles*, 979 F.2d 1504 (11th Cir. 1992) remanded Judge King's 1991 Summary Judgment and Permanent Injunction against State regulation of the harvest of Spanish mackerel from the Atlantic Exclusive Economic Zone. The 11th Circuit requested additional factual findings, but in doing so construed the regulatory scope of the Magnuson Act.

29. Judge Fay observed in *Southeastern Fisheries* that "All fish, except highly migratory species are subject to the exclusive fishery management authority of the United States". I.D. at 1507. The Florida Statute on Spanish Mackerel did not purport to regulate the harvest of Spanish mackerel in the EEZ, but the <u>landing</u> of fish legally harvested from the Atlantic EEZ.

30. Two issues from the *Southeastern* appeal are directly related to this case. The State "landing law" discriminated against its own citizen (Equal Protection, Commerce, Supremacy) and the State Landing Law interfered with Interstate Commerce because it prohibited out-of-state vessels from using Florida ports to land otherwise legal cargos of fish. I.D. at 1507.

31. In *Southeastern Fisheries,* Judge Fay stated, "We think the Supremacy Clause will be dispositive." . . . and . . . "We think Congress outlined a fairly complete scheme in the Magnuson Act and believe Congress must have intended to occupy the field of fishery management in the EEZ." I.D. at 1509

32. Construing the regulatory scope of the Magnuson Act, Judge Fay stated, "Congress thus established a federal fishery zone, provided the States with an active role in managing the resources of the EEZ through their voting positions on the council, granted ultimate responsibility for overseeing the program to the Secretary and <u>left nothing pertaining to the EEZ for the States to regulate"</u>. (Emphasis supplied)

33. Judge Fay closed the *Southeastern* Opinion with a question. I.D. at 510:
    "What are the standards, if any, set by the Magnuson Act for allowing State regulation of activity in the EEZ?"

34. Judge Fay's question in 1992 was answered by the Ninth Circuit in *United Cook Inlet v. National Marine Fisheries Service*, 837 F.3d 1055 (9th Cir. 2016). In *United Cook*, the North Pacific Fishery Management Council (one of 8 federal fishery management councils) had promulgated a 1979 Fishery Management Plan for salmon. In 1990, the salmon FMP was revised by "Amendment 12".

35. In *United Cook,* the commercial Alaska Drift Association argued against Amendment 12 by pointing out that the Magnuson Act requires limits on the number of fish caught. 16 USC §1853 (a)(15) I.D. at 1061. The Defendants' State pompano fishery management rules (paragraph 5 above) have no limit whatsoever on the amount of federal pompano harvested by Florida registered vessels from the PEZ. This is another State violation of the Magnuson Act.

36. In 2012, the National Marine Fishery Service issued a Final Environmental Assessment finding that, "The State is the appropriate authority for managing Alaska salmon fisheries given the State's existing infrastructure and expertise." *United Cook,* I.D. at 1061.

37. The Alaska Drift Association filed a challenge to Amendment 12 alleging that it was contrary to the Magnuson Act requirement that the National Marine Fishery Service prepare an FMP "for each fishery under its authority that requires conservation and management". 16 USC §1852(h)(i).

38. The National Marine Fisheries Service argued that the Magnuson Act only requires an FMP for fisheries that need *federal* conservation and management and, argued that Cook Inlet EEZ was in "good hands" with Alaska.

39. Like the State Defendants in the case at bar, NMFS relied on 16 USC §1856(a)(3)(A)(1) which allows a State to regulate state-licensed vessels in federal waters when no FMP exists.

40. Like the State Defendants in the case at bar, NMFS argued that §1856(a)(3)(A)(1) allows NMFS to cede regulatory authority to a state over federal (EEZ) waters simply by declining to issue an FMP.

41. In 1996, prior to the 9th Circuit's decision in *United Cook* the "Sustainable Fisheries Act" (codified at 16 USC §1856(a)(3)(A)) limited state fishery jurisdiction in the EEZ. In *United Cook,* the Court called the 1996 Amendment §1856(a)(3)(B), the "delegation" provision of the Magnuson Act. This 1996 Amendment <u>expressly</u> authorizes NMFS to "delegate management of a fishery to a state" through an FMP,

10

at which point the State can regulate <u>any</u> fishing vessel in the federal waters at issue, regardless of registration.  837 F. 3d at 1062, 63.

42. In the 11th Circuit Opinion in *Southeastern Fisheries v. Chiles*, 979 F.2d at 510, Judge Fay had asked, "What are the standards, if any, set by the Magnuson Act for allowing state regulation of activity in the EEZ?"  The Ninth Circuit answered Judge Fay's question in *United Cook*, 837 F.3d at 1063:  "The Act is clear, to delegate authority over a federal fishery to a state, NMFS must do so expressly in an FMP."

43. The Ninth Circuit in *United Cook* held that the federal government <u>cannot</u> delegate management of the fishery to a state without a <u>formal</u> FMP, because the Federal Fishery Management Council is <u>required</u> to develop FMP's for fisheries within its jurisdiction requiring management and then manage those fisheries "through" those plans.  16 USC §1801 (b)(4)-(5), 1852(h)(1).

44. The Ninth Circuit held that . . . "the "deferral" provision covers those waters where, for some reason, a plan is not in effect; it is not an invitation to a Council to shirk the statutory command that is "shall" issue an FMP for each fishery within its jurisdiction requiring conservation and management".  Only an FMP can delegate EEZ Fishery Management to a state.

## **LEGISLATIVE HISTORY**

45. The Ninth Circuit requirement that only a Federal FMP can allow a State to manage an EEZ fishery is also based on the Congressional legislative history of the Magnuson Act.  The Ninth Circuit concluded that "Congress therefore repeatedly

11

rejected proposals to provide for state management of federal fisheries without an FMP."

46. The Legislative History from 1983 confirms that Congress considered <u>and rejected</u> amendments that would allow State fishery management in the EEZ without explicit authority in a federal FMP.

47. There were attempts in 1981 to allow State fishery management in the EEZ by allowing a Federal Fishery Management Council to decide "In the Judgment of the Council" that a federal fishery resource does not need. . . "conservation and management". See H.R. 5002, 97th Cong. (1981) Serial No. 97-118, at 305.

48. A competing Senate Bill would have required fishery management plans for each fishery "that the council shall determine requires conservation and management." See S. 1668, 97th Cong. (1981).

49. These discretionary provisions ("in the judgment of the council" and "the council shall determine") were stripped from the 1983 Amendments. See Pub. L.No. 97-453, §5, 96 Stat. 2481 (1983).

50. Congress refused to leave the decision to produce a federal FMP up to the judgment of a Federal Fishery Management council.

51. In 1996, Congress again amended the Magnuson Act to recognize the federalism concepts of the Act. Congress required delegation <u>through</u> a fishery management plan where . . . "the State laws and regulations are consistent with such fishery management plan" and, "subject to continuing oversight by NMFS and the Council to ensure the State's management remains consistent with the FMP". See Pub.L.No. 104-297, §112, 110 Stat. 3559 (1996) Amending 16 U.S.C.§1856(A).

52. The legislative history discussing the actual language promulgated in 1996 is determinative in this case.  In a colloquy on the Senate floor, Senator Stevens confirmed the reading of Senator Graham that while NMFS and the Councils "proposed giving authority to the State over certain fisheries", that proposal was dropped in favor of legislation that "would allow a fishery management council to delegate jurisdiction over certain fisheries in the EEZ to a State, if the State has regulations consistent with the fishery management plan for that area.  A state can have that authority, Senator Stevens explained, only so long as there is a "plan that delegates authority to the State".  Complete deferral without any federal oversight to the state was <u>never</u> an option.  See Senator Graham and Stevens Statement 42 Cong. Reg at S. 10911.  In sum, the legislative history of the Magnuson Act confirms that Congress never intended a council to allow state management of an EEZ fishery without a federal fishery management plan.

53. Based on this legislative history, the Ninth Circuit concluded:

    "The Magnuson-Stevens Act unambiguously requires a council to create an FMP for each fishery under its authority that requires regulation and management".  *United Cook* 837 F.3d at 1064.

54. Although the Ninth Circuit's decision in *United Cook* is out of this Court's jurisdiction, the decision is based on statutory language, legislative history and public policy considerations <u>identical</u> to those in this case.  The *United Cook* decision is factually indistinguishable from this case and is the most recent Federal Appellate Authority available on the topic.

55. In *Amy Coney Barrett's* 2005 Article "Statutory *Stare Decisis* in the Inferior Courts of the United States", 73 850 Wash. L. Rev. 2 (2005), she points out that nearly every Circuit Court has adopted a strong rule of *Stare Decisis*. This is especially true in the interpreting of Federal Statues by Circuit Courts.

**WHEREFORE**, for reasons set forth above, Plaintiff prays for relief as follows:

A. An Order of this Court advancing this case on its calendar and granting a speedy hearing thereof, and

B. A Declaration that this Court has jurisdiction of a real and active sustainable controversy between these parties

C. A Declaration that Florida Administrative Code, Rules 68B-35.005 and 68B-35.002(10) as applied to the federal Gulf of Mexico EEZ violates the Equal Protection, Commerce and Supremacy Clauses of the United States Constitution because:

   1. The Rules impermissibly discriminate against Florida citizens and Florida registered vessels because only they are prohibited from the harvest of pompano outside the boundaries of the Pompano Endorsement Zone (Rule 68B-35.005(2) F.A.C.)

   2. The Rules impermissibly restrict the landing of pompano harvested from the Gulf of Mexico EEZ into any Florida port north of Cape Sable and south of Hurricane Pass (Rule 68B-35.005(2)(b) F.A.C.

   3. The Rules are an unauthorized interference with commerce between the states because they seek to prohibit out of state vessels (and Florida registered vessels) from using any Florida port north of Hurricane Pass and south of Cape Sable to

land otherwise legal cargos of pompano harvested from the Gulf of Mexico EEZ.

4. The Rules violate the Magnuson Act (16 USC §1801(b)(3)) by restricting the Commercial Production of Pompano from the Gulf of Mexico EEZ.

5. The Rules are invalid in that they seek to manage and regulate the pompano harvest from the United States EEZ without the express authority of a federal fishery management plan.

D. Plaintiffs seek costs, interest and reasonable attorneys' fees under 46 USC §1988 and other relief that the Court deems just and proper.

<u>INJUNCTIVE RELIEF</u>

56. Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1 through 55 above,

57. Plaintiff seeks a Preliminary and Permanent Injunction against the Defendants prohibiting the enforcement of the Gulf of Mexico EEZ Florida Pompano Rules promulgated by the Defendants.

58. Plaintiff is continuously being denied due process and equal protection under the Federal Constitution due to the promulgation and enforcement of the Florida Pompano Rules by Defendants.

59. Without injunctive relief, Plaintiff will continue to suffer damages and violations of his constitutional rights.

**WHEREFORE** Plaintiff respectfully requests that this Court: (A) grant preliminary and permanent injunctive relief requiring Defendants to immediately stop enforcing the Florida

Pompano Rules outside Florida's territorial boundaries; and (B) Plaintiffs request an award of their costs, interest and reasonable attorneys' fees under 46 USC §1988.

Dated this 18 June 2021.

>HORAN LAW
>608 Whitehead Street
>Key West, Florida 33040
>Telephone (305) 294-4585
>Facsimile (305) 294-7822
>
>BY: _/s/ David Paul Horan_____
>FOR THE FIRM
>Florida Bar No. 142474
>David@horan.law

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document was served on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing on this _18th_ day of June, 2021.

>BY: _/s/ David Paul Horan_____
>FOR THE FIRM
>Florida Bar No. 142474
>David@horan.law