UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 4:21-CV-10009-MARTINEZ-BECERRA

FLORIDA KEYS COMMERCIAL FISHERMAN'S
ASSOCIATION, LLC, et al.

       Plaintiffs,

v.

STATE OF FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION, et al.,

       Defendants.

_____/

## **<u>DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT</u>**

Defendant ERIC SUTTON in his official capacity as Executive Director of the Florida Fish and Wildlife Conservation Commission (the "FWC"), by and through his undersigned counsel, files his Amended Motion to Dismiss and in support thereof state as follows:

1. This 42 U.S.C. § 1983 action for declaratory and injunctive relief was originally filed by Plaintiff Daniels and the "Florida Keys Commercial Fisherman's Association, LLC." They alleged that the FWC and Defendant Sutton violated their rights through regulations allowing the harvesting of pompano in the Gulf of Mexico using gill and entangling nets within the Pompano Endorsement Zone ("PEZ"). The PEZ is a State-designated area of the federal Exclusive Economic Zone ("EEZ") in the Gulf of Mexico, between Cape Sable in Monroe County and Hurricane Pass in Collier County. F.A.C. 68B-35.005(2)(b).

2. Plaintiff's original Complaint was dismissed on July 1. (ECF 53, 56.) On June 18, he filed his Amended Complaint without leave. (ECF 54.) The Court's July 1 Order allowed the Amended Complaint to serve as the operative pleading. (ECF 56 at p. 2.)

3. The Amended Complaint drops the "Florida Keys Commercial Fisherman's Association, LLC" as a Plaintiff and the FWC as a Defendant. It retains Sutton and names the FWC's individual members as new Defendants.

4. In the Amended Complaint, Plaintiff is specifically challenging F.A.C. 68B-35.002(10), which only defines the PEZ, and F.A.C. 68B-35.005, which creates the PEZ and pompano endorsement (collectively, "the pompano regulations").

5. While some parties have changed, the claims remain the same. Plaintiff still alleges the pompano regulations violate the Magnuson-Stevens Federal Fisheries Act (the "Magnuson Act" or the "Act"), and violate the United States Constitution's equal protection, commerce and supremacy clauses as a result.

2

6. Defendant now moves to dismiss the Amended Complaint for reasons including lack of subject-matter jurisdiction, the statute of limitations, violation of Fed. R. Civ. P. 8 and failure to state a claim.

7. Dismissal should be with prejudice. Plaintiff has already amended his pleading once and no amendment can cure his misapplication of the Magnuson Act or cure the action's untimeliness.

## MEMORANDUM OF LAW

### A. Background

Plaintiff's claims regarding the pompano regulations are purportedly based on the Magnuson Act, which empowers the federal government through its Regional Management Fishery Councils to create a fishery management plan ("FMP") for those species of EEZ marine life the government has found to be "in need of federal conservation and management." 16 U.S.C.A. § 1852(h)(1).

Under the Act, states have exclusive jurisdiction to regulate vessels within waters up to three nautical miles from their territorial borders. 16 U.S.C.A. § 1856(a)(2)(C)(i).[1] Beyond those three miles is the federal EEZ, which extends 200 nautical miles from the state's border. Proclamation No. 5030, 48 Fed. Reg. 10605 (Mar. 10, 1983). Although the EEZ is federal, the Magnuson Act allows states to regulate vessels within the EEZ under certain circumstances, the first of which applies here:

> **The fishing vessel is registered under the law of that State, and (i) there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating**; or (ii) the State's laws and regulations are consistent with the fishery management plan and applicable Federal fishing regulations for the fishery in which the vessel is operating.

16 U.S.C.A. § 1856(a)(3)(A) (emphasis added). Plaintiff concedes there is no FMP or other federal regulation for pompano. (ECF 54 at ¶¶ 20, 39, 52, p. 15.) Hence, § 1856(a)(3)(A)(i) governs this case.

Commercial fishing for pompano requires a saltwater products license with a restricted species

---

[1] Although the EEZ is generally three nautical miles from a state's territorial border, Florida's border in the Gulf of Mexico extends three leagues, or nine nautical miles, from the coastline. Art. II, § 1(a), Fla. Const.

endorsement because the State has designated pompano as a restricted species. Fla. Stat. §§ 379.361(2); F.A.C. 68B-2.006, 68B-35.001(3), 68B-35.005(1)(a). With a saltwater products license, pompano can be commercially fished in two ways: with and without a State-issued pompano endorsement.

**Without a pompano endorsement** – Anyone fishing for pompano in either State or EEZ waters who does not possess a pompano endorsement is allowed to harvest and land 250 pompano daily using allowable gear (cast nets, hook and line, or beach or haul seine). F.A.C. 68B-350.0035(2)(b). The use of gill and entangling nets—the gear at issue in this case—is prohibited within Florida waters. Art. X, § 16, Fla. Const. Without a pompano endorsement, the simultaneous possession of pompano and a gill or entangling net is illegal in State waters unless the pompano were harvested in federal waters as incidental bycatch while targeting another species. F.A.C. 68B-35.0035(2)(b). If so, the incidental bycatch may not exceed 100 pompano and the vessel must travel directly through State waters without stopping until it reaches its usual place of docking or the licensed wholesale dealer where the catch will be sold. F.A.C. 68B-35.0035(2)(b), 35.004(5)(b).

**With a pompano endorsement** – Anyone with a pompano endorsement can harvest an unlimited number of pompano using gill and entangling nets within the PEZ. Once they enter State waters, the pompano still must be transported and landed in between Cape Sable and Hurricane Pass. F.A.C. 68B-35.005(2)(b).

Plaintiff alleges that the FWC is authorized to regulate fishing within Florida territorial waters "pursuant to Sections 379.2401 and 379.2422 Florida Statutes," and that it "[a]ttempt[ed] to use this authority to "promulgate[ ] fishery management regulations for the federal harvest of pompano from the Gulf of Mexico EEZ." (ECF 54 at ¶ 7.) This is incorrect. The FWC is able to regulate in the EEZ specifically because of § 1856(a)(3)(A) of the Magnuson Act, not Florida law. Beyond that, the FWC's authority is not granted to it by Fla. Stat. §§ 379.2401 or 379.2422 nor is it constrained by those statutes. The FWC is not merely an executive State agency, it is a *constitutional*

4

State agency with the exclusive authority to regulate fish and wildlife. Art. IV, § 9, Fla. Const. Its regulations are controlling over statutes that may conflict with its powers. <u>Airboat Ass'n of Fla., Inc. v. Fla. Game & Fresh Water Fish Com'n</u>, 498 So. 2d 629, 631 (Fla. 3d DCA 1986) ("It has consistently been held that the Commission is vested with exclusive legislative authority to adopt reasonable rules to regulate game and fresh water fishing in this state, and that the legislature is constitutionally prohibited from adopting statutes in conflict with such rules."). <u>See also</u> <u>City of Miramar v. Bain</u>, 429 So. 2d 40, 42 (Fla. 4th DCA 1983). If any conflict between the pompano regulations and the two statutes actually did exist, the regulations would prevail.

**B.  <u>Motion to Dismiss Standard</u>**

Fed. R. Civ. P. 8(a) requires a "short and plain statement of the facts" in order to "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." While a Complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions … . Factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege facts sufficient to state a claim of relief that is plausible on its face. <u>Id.</u> at 547. A claim is facially plausible if the plaintiff pleads facts allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a "sheer possibility" that a defendant has acted unlawfully. <u>Id.</u> An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. <u>Id.</u> Nor will "'naked assertion[s]' devoid of 'further actual enhancement.'" <u>Id.</u> (quoting <u>Twombly</u> at 557).

When subject-matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. <u>Sweet Pea Marine, Ltd. v. APJ Marine, Inc.</u>, 411 F.3d

1242, 1248 n.2 (11th Cir. 2005). On Rule 12(b)(1) facial attack, courts "merely … look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." <u>Menchaca v. Chrysler Credit Corp.</u>, 613 F.2d 507, 511 (5th Cir. 1980). On the other hand, a 12(b)(1) factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." <u>Id.</u> A court "is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint." <u>Americopters, LLC v. F.A.A.</u>, 441 F.3d 726, 732 n.4 (9th Cir. 2006) (emphasis in original).

## C. **The Court Lacks Subject-Matter Jurisdiction**

### 1. **Lack of Standing**

To invoke Article III jurisdiction in this Court, a plaintiff must establish three elements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

<u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560–61 (1992) (internal citations omitted).

Plaintiff lacks standing for several reasons. First, he lacks standing as to his commerce clause claim because he has failed to establish injury. He asserts that the pompano regulations interfere with "commerce between the states because they see to prohibit out of state vessels (and Florida registered vessels) from using any Florida port north of Hurricane Pass and south of Cape Sable to land otherwise legal cargos of pompano harvested from the Gulf of Mexico EEZ." (ECF 54 at pp. 14-15.)

However, the only allegation connecting Plaintiff himself to the regulations in any way is that he was arrested while still at sea for harvesting pompano with a gill net outside the PEZ. (<u>Id.</u> at ¶ 4;

ECF 54-1 at 1-10.) He makes no allegations that he has ever sold or tried to sell pompano to other states directly or even indirectly. He does not allege he has ever felt any financial, employment or other economic impacts from being unable to use a gill net or to land pompano outside the PEZ, or because out-of-state vessels had an advantage over him. He does not so much as allege that he had ever caught a single pompano before his arrest, or that he had ever landed or tried to land pompano anywhere. There is nothing in the Amended Complaint that establishes his commerce-clause standing.

For the same reasons, Plaintiff lacks standing to seek a declaration that the pompano regulations violate the Magnuson Act by "restricting the Commercial Production of Pompano from the Gulf of Mexico EEZ." (ECF 54 at p. 15.) Plaintiff does not allege he was ever involved in the commercial production of pompano in the EEZ and has suffered an injury as a result.

Second, to the extent he is basing any claim on the unlimited harvesting of PEZ pompano by endorsement-holders, (ECF 54 at ¶¶ 9, 10, 19), he also has not established any injury from that provision. He was arrested for gill-netting pompano in the EEZ, which at most only implicates the gear allowed within the EEZ, not the number of pompano actually caught or allowed.

Third, Plaintiff has not established redressability for any injuries he allegedly did suffer. Currently, the PEZ is the only place that Florida allows the harvesting of pompano using a gill or entangling net. If the challenged pompano regulations were stricken, Plaintiff could use a gill net to harvest pompano anywhere in the EEZ, but this would not redress his purported injury because he could not *return* to Florida waters with the gill net and pompano. As soon as he were to enter State waters again while in possession of both, he would be facing arrest for violating the State's constitutional gill-net ban, which is not challenged in this action. The PEZ allows vessels to return through State waters with gill nets and pompano, a "safe harbor" from the gill-net ban that would no longer exist. Thus, striking down the PEZ and taking pompano endorsements those who have them would not give Plaintiff any new rights, it would only remove rights given to others by the regulations.

Koch v. Shell Oil Co., 52 F.3d 878,882-83 (10th Cir. 1995) ("Rabon's non-inclusion is not ameliorated by striking down rights given to others, even if we discerned grounds to do so (which we do not). Mr. Koch is really asking us again, in another context, to rewrite rather than strike down the statute. That is not our province."). Plaintiff would be left *worse* off unless he did not plan on returning to Florida with his EEZ pompano or was prepared to be arrested for gill-netting them.

Fourth, Plaintiff cannot establish either causation or redressability for the regulations' purported "discrimination" in favor of out-of-state vessels. Under the Magnuson Act, a state cannot regulate out-of-state vessels in the EEZ, which would not change if the PEZ were stricken. 16 U.S.C.A. § 1856(a)(3)(A). There is no causation because it is the Act and not the pompano regulations that prevents Florida from regulating out-of-state vessels in the EEZ. There is no redressability because the Court cannot bring out-of-state vessels under Florida's jurisdiction in violation of the Act. Southeast Fisheries Ass'n, Inc. v. Mosbacher, 773 F. Supp. 435, 441 (D.D.C. 1991) ("Additionally, the [challenged] regulations require compliance with state laws, even if a vessel is not registered in the state where the catch is landed. Thus, the regulations go beyond what is authorized by the [Magnuson Act]. *See* 16 U.S.C.A. § 1856(a)(3)."). Out-of-state vessels could continue harvesting unlimited EEZ pompano using gill nets the same as they do now. The difference is, a Florida fisherman such as Plaintiff would now face violation of the gill-net ban once he re-enters State waters because the PEZ would no longer exist.

Fifth, Plaintiff lacks standing to bring any part of his claims on behalf of other individuals, such as "the majority of Florida's commercial fisherman," (ECF 54 at ¶ 13) or out-of-state fisherman, (ECF 54 at p. 14). He cannot create standing by referencing theoretical injuries to non-parties. Powers v. Ohio, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").

   2. **The Case Presents No Substantial Question of Federal Law**

This case is not before the Court on diversity jurisdiction: all Defendants are State of Florida officials, while Plaintiff is a Florida resident based in Monroe County. Rather, the Amended Complaint purports to raise a federal question. That question arises from Defendant's purported violation of the Magnuson Act.

The existence of federal-question jurisdiction is governed by the "'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Mere invocation of federal law does not mean a plaintiff has stated a federal question. "The fact that a court must apply federal law to a plaintiff's claims or construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction—the implicated federal issue must be *substantial*." Dunlap v. G&L Holding Group, Inc., 381 F.3d 1285, 1291–92 (11th Cir. 2004) (emphasis in original). Where a federal claim is "plainly unsubstantial," it may be dismissed for lack of subject-matter jurisdiction. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105 (1933). See also Nietzke v. Williams, 490 U.S. 319, 327 n.6 (1989). Insubstantiality "has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" Hagans v. Lavine, 415 U.S. 528, 537 (1974). Plaintiff's claims may be premised on the federal Magnuson Act, but that alone does not permit him to invoke federal jurisdiction where his claims are fully without merit. Houchens v. Beshear, 441 F. Supp. 3d 508, 516 (E.D. Ky. 2020) (claim under federal statute does create subject-matter jurisdiction where claims is so unsubstantial as to be devoid of merit) (quoting Hagans at 528).

This action is plainly unsubstantial because it is based solely on Plaintiff's misapplication of the Magnuson Act and on inapplicable cases dealing with other provisions of the Act. Plaintiff does this without acknowledging the plain language of 16 U.S.C.A. § 1856(a)(3)(A)(i), which *does* apply

and is entirely dispositive: as he concedes, there is no FMP or other federal law regulating pompano, so Florida is federally permitted to regulate State-registered vessels within the EEZ.

The "federal question" in this case is Plaintiff's own meritless belief that Florida cannot regulate pompano in the EEZ even though the fishery does not need federal management and conservation and has no FMP. Plaintiff contends that § 1856(a)(3)(A)(i) is either meaningless or means the opposite of what it says: he asserts that no state can ever regulate in the EEZ *unless* an FMP exists. (ECF 54 at ¶¶ 8, 46, p. 15.) An unambiguous statutory provision such as § 1856(a)(3)(A)(i) must be given its plain meaning. Kleer v. United States, 761 F.2d 1492, 1495 (11th Cir. 1986). If any statutory construction is actually needed, the provision cannot be construed in a manner that renders it meaningless or superfluous, as Plaintiff would do here. Beck v. Prupis, 529 U.S. 494, 506 (2000). Section 1856(a)(3)(A)(i) means what it says. It unambiguously allows Florida to regulate EEZ pompano without need for an EMP despite what Plaintiff's claims to the contrary.

To support Plaintiff's misapplication of the Act, he cites and quotes at length United Cook Inlet v. Nat'l Marine Fisheries Serv., 837 F.3d 1055 (9th Cir. 2016). What quickly and obviously distinguishes the case is that the salmon at issue were unquestionably a federal fishery found to be in "need of conservation and management" under the Act, triggering the federal government's obligation to create an FMP. Id. at 1061. As the Ninth Circuit stated, "the usual initial question is whether the fishery at issue even needs conservation and management." Id. There is no allegation (and certainly no authority) establishing that pompano have ever been found by the federal government to be a fishery in need of conservation and management under the Act.

United Cook Inlet arose because despite the salmon FMP, the federal government attempted to delegate management of the fishery within Alaska's Cook Inlet—part of the FMP's area—back to the state by simply amending it out of the FMP. Id. at 1060. The case was a dispute over the requirements of 16 U.S.C. § 1852(h)(1) of the act, which governs fishery management counsels and

10

is not applicable here. The federal government argued that it could decide under the Act that a state was capable of managing a fishery in need of management and conservation, and that it could "delegate" its authority to manage that fishery by just not issuing an FMP—thereby enabling the state's limited ability to regulate pursuant to § 1856(a)(3)(A)(i). Id. at 1061-62. The Ninth Circuit found that state regulation of those fisheries through § 1856(a)(3)(A)(i) is not a replacement for an FMP because, of course, unlike the federal government a state can never regulate out-of-state vessels in the EEZ. Id. at 1062. Although the federal government *can* delegate its management of fisheries in need of conservation and management back to a state, the Act requires that it be done affirmatively and expressly, not just as a deletion from an FMP. Id. at 1062-63.

Nevertheless, Plaintiff's takeaway from United Cook Inlet is that it holds an FMP is *always* required for a state to regulate *any* fishery within the EEZ. United Cook Inlet does not at all stand for this position. To the contrary, the case itself points out the opposite:

> In 1983, Congress amended the Act to specify that a Council need only prepare an FMP with respect to a fishery "that requires conservation and management." Pub. L. No. 97–453, § 5(4), 96 Stat. 2481, 2486 (codified as amended at 16 U.S.C. §–1852(h)(1)). **The conference report explained this amendment was intended "to clarify that the function of the Councils is not to prepare a fishery management plan (FMP) for each and every fishery within their geographical areas of authority. Rather, such plans are to be developed for those fisheries which require conservation and management."** H.R. Conf. Rep. No. 97-982, 97th Cong., 2d Sess., at *18.

Id. at 1058–59.

Indeed, the difference between this case and United Cook Inlet is made readily apparent in the very first sentence of the latter's Procedural Background section: "United Cook filed this action in 2013, challenging Amendment 12 and its implementing regulations as contrary to the Magnuson-Stevens Act's requirement that a Council prepare an FMP 'for each fishery under its authority **that requires conservation and management**,' 16 U.S.C. § 1852(h)(1)." Id. at 1061 (emphasis added).

Throughout the Amended Complaint, Plaintiff misconstrues the term "federal fishery" used in United Cook Inlet to mean "any fish in federal waters." But in the context of that case, it is only used in reference to fisheries in need of "conservation and management." In sum, every time Plaintiff references United Cook Inlet as a foundation of his claims, which is often, he is ignoring the fact that its analysis clearly applies to a different type of fishery—one found to be in need of conservation and management—and to questions of delegating federal responsibility for managing that type of fishery. None of that applies to the present case.

Plaintiff continues misapplying cases to support federal-question jurisdiction by citing and discussing Bateman v. Gardner, 716 F. Supp. 575 (S.D. Fla. 1989), aff'd, 922 F.2d 847 (11th Cir. 1990), and Southeastern Fisheries Ass'n, Inc. v. Martinez, 772 F. Supp. 1263 (S.D. Fla 1991) and 979 F.2d 1504 (11th Cir. 1992). (ECF 54 at ¶¶ 25-33.) Both of these cases involved existing FMPs. For example, the claims in Martinez arose because a federal FMP specifically allowed fishermen to harvest a certain amount of Spanish mackerel in the EEZ, but Florida's challenged regulation limited Florida fishermen to less than that amount. Likewise, the claims in Bateman arose because Florida did not permit Florida fishermen to shrimp in an area where it was permitted under the fishery's FMP. These cases were about a state conflict with an FMP, *not* state action in the absence of any conflict with federal law or regulation at all. See Chinatown Neighborhood Ass'n v. Harris, 794 F.3d 1136, 1142 (9th Cir. 2015). ("The cases relied upon by the plaintiffs that invalidate state regulations with effects on fishing in the EEZ are unpersuasive because in each case, the invalidated regulations either directly proscribed what federal law affirmatively allowed, or directly banned activity within the EEZ that was legal under federal law.") (internal citations omitted). Plaintiff could not have cited any authority to support his theory that Florida cannot regulate within the EEZ *unless* it is through an FMP because no such authority exists.

If it were not clear enough from § 1856(a)(3)(A)(i) that Florida can regulate pompano in the EEZ, it is was confirmed by the Magnuson Act fishery management council responsible for the Gulf of Mexico. In a 2000 letter to the FWC, the council's chair stated, "Since there is no federal fishery management plan or fishing regulations for pompano in the Gulf of Mexico, Florida has the authority to extend its pompano fishing regulations in federal waters for vessels registered in Florida." The letter is attached as Exhibit B and can be judicially noticed for this Rule 12(b)(1) jurisdictional argument, as well as for any Rule 12(b)(6) argument as it is a public government record.

Plaintiff has not raised a substantial federal question despite invoking the Act because the claims are meritless. They rely on applying the wrong parts of the Act when the *right* part definitively allows Florida to regulate in the EEZ. See, e.g., Foster v. Howard Cmty. Coll., CIV.A. RDB-13-1395, 2014 WL 758027, at *3 (D. Md. Feb. 24, 2014) (finding lack of subject-matter jurisdiction where claims were based on "wholly inapplicable" statutory references).

In addition, Plaintiff makes contradictory if not baffling allegations about the "discriminatory" effect of the pompano regulations. He asserts that the regulations have a "discriminatory impact on all Florida registered vessels because only they are prohibited from the commercial harvest of pompano in the Gulf of Mexico EEZ" outside of the PEZ. (ECF 54 at ¶ 14.) See also (Id. at ¶¶ 16, 21, p. 14). Yet he correctly concedes that in the absence of an FMP, § 1856(a)(3)(A)(i) *only* allows states to regulate state-registered vessels within the EEZ: "The Defendant FWC has no authority under the Magnuson Act to enforce the Florida Pompano Rule against non-Florida vessels outside Florida's territorial waters." (Id. at ¶ 17.) This results in Plaintiff alleging that Defendant should be regulating out-of-state vessels in the EEZ, while simultaneously alleging that Defendant cannot regulate out-of-state vessels in the EEZ. Plaintiff's own allegations show the lack of merit in any claim of discrimination in favor of out-of-state vessels.

**D. Violation of Rule 8**

As another reason for dismissal, the Amended Complaint does not comply with Rule 8. Plaintiff devotes over 6 pages and 32 paragraphs solely to legal arguments in support of his claims. (ECF 54 at ¶¶ 24-55.) This is not necessary, and results in the pleading violating the "short and plain statement" requirement:

> Further, legal argument and citations are not proper in a complaint. See Chevy Chase Bank, F.S.B. v. Carrington, No. 6:09-cv-2132-Orl-31GJK, 2010 WL 745771, at *4 (M.D. Fla. Mar. 1, 2010) ("Huge swaths of the [complaint] are improper irrespective of their relevance, consisting of lengthy legal arguments, case citations, and quotations from treatises—material proper in legal memoranda, but almost never proper in a complaint.").

Saunders v. Kinsale Ins. Co., 2:19-CV-14328-KMM, 2020 WL 4346916, at *5 (S.D. Fla. Feb. 10, 2020). See also Benjamin v. Holy Cross Hosp., 11-62142-CIV, 2012 WL 1900026, at *4 (S.D. Fla. May 24, 2012) (dismissing complaint where it "also includes legal arguments and conclusions that are not proper to include in a complaint").

## E. Statute of Limitations

Plaintiff's claims are time-barred. The statute of limitations for a § 1983 claim is determined by a state's residual personal injury statute, which is four years in Florida. Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999). The limitations period begins to run when a reasonably prudent plaintiff would have been able to determine that a violation occurred. Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006).

The Amended Complaint and the pompano regulations' histories show that the PEZ and pompano endorsement regulations have been in effect since 2001, or 20 years ago. (ECF 54-1 at 11, 13.) A version of F.A.C. 68B-35.005 from 2004 containing the pompano endorsement provisions is available on the Florida Department of State's "Florida Administrative Code and Florida Administrative Register" website. See https://www.flrules.org/gateway/ruleno.asp?id=68B-35.005. A version of F.A.C. 68B-

35.002(10) from 2011 containing the Pompano Endorsement Zone definition is available at https://www.flrules.org/gateway/ruleno.asp?id=68B-35.002.

Just as it is clear the pompano regulations existed more than four years ago, it is clear that Plaintiff knew or should have known of the alleged constitutional violation beyond that window. As exhibits to his Amended Complaint, Plaintiff filed his complete arrest report for having violated F.A.C. 68B-35.004(4). (ECF 54-1 at 1-10.) Included within the report is a copy of his vessel registration, number DO643730, and his commercial saltwater products license, number 1100. (Id. at 7.)

Attached as Exhibit A to this Motion is a copy of Plaintiff's saltwater products license renewal statement for license number 1100 and vessel number DO643730 that he signed on May 22, 2004. At the bottom of the statement is a pledge that Plaintiff will faithfully observe "all laws and lawful regulations of this state regulating the conservation, dealing in, taking, selling, transportation and/or possession of fish, seafood and other saltwater products." Notably, the document is a *renewal* of his license, meaning he had it even before then.[2]

As Plaintiff's license information is within the four corners of his pleading, Defendant can raise a statute of limitations defense on a motion to dismiss. Even if it were not within the four corners, Defendant still could raise the defense because it relies solely on judicially noticeable government records. A district court "may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider." Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) (internal citation omitted).

Given that a commercial fisherman is responsible for "faithfully observing" all laws and regulations governing their commercial fishing activities, a reasonably prudent plaintiff would not

---

[2] For good measure, his 2005-06 renewal statement is also included within the exhibit.

have needed almost two decades before learning of the purported constitutional violations arising from the pompano regulations. Those regulations have always been freely and widely available public records, the same as any other law or regulation. Merely because Plaintiff was *arrested* for violating a regulation within the past four years does not mean his limitations period began at that point. Plaintiff's statements in the arrest report suggest that he did not know the pompano regulations existed:

> I then stated […] you're in violation according to state law." Mr. Daniels asked, "How?" I replied, "You must harvest and land north of N25* 0.900; and south of N26*00.00'." Mr. Daniels stated, "We're outside of the 9 NM line." I agreed but told him they still had the designated zone for the harvest of Pompano by gillnet. Mr. Daniels asked what the law was, so I told him I would get the law book off the patrol vessel and review exactly how the rules/laws are written.
> …
> I asked if he had any questions and he responded, "Yeah, no. I'm seeing what you're saying right now."

(ECF 54-1 at 4-5.)

Ignorance of the law does not toll a statute of limitations. Rice v. Sixteen Unknown Federal Agents, 648 F. App'x 959, 962 (11th Cir. 2016); Wakefield v. R.R. Retirement Bd., 131 F.3d 967, 979 (11th Cir. 1997). This action is time-barred and should be dismissed with prejudice.

**F. Failure to State a Claim**

Should the Court find for any reason that Plaintiff's claims are not so unsubstantial as to deprive it of subject-matter jurisdiction, then at the least it should find that Plaintiff has failed to state a claim. Plaintiff's constitutional claims are all based on a non-existent conflict with the Magnuson Act. The Gulf pompano are not a fishery in need of federal management and conservation, and there is no FMP. Florida can therefore regulate pompano in the EEZ pursuant to § 1856(a)(3)(A)(i).

With the Magnuson Act creating no rights in this case, the only way Plaintiff could have established a constitutional claim would have been to allege some other independent basis, but none would apply because there is no general constitutional right or entitlement to harvest a particular fish:

Further, plaintiffs can have no property right in the migratory fish themselves. See Douglas v. Seacoast Products, Inc., 431 U.S. 265, 284, 97 S.Ct. 1740, 1751, 52 L.Ed.2d 304 (1977) ("it is pure fantasy to talk of 'owning' wild fish, birds, or animals.") In addition, plaintiffs have no right to fish which implicates property interests, nor do they have any legitimate claim of entitlement. While they may have an expectation of participation, "a unilateral expectation" of a benefit is insufficient to establish a property interest. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Parravano v. Babbitt, 861 F. Supp. 914, 928 (N.D. Cal. 1994), aff'd, 70 F.3d 539 (9th Cir. 1995).

See also Tlingit & Haida Indians of Alaska v. United States, 389 F.2d 778, 785 (Ct. Cl. 1968) ("Since the primordial decision in Greer v. Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896), it has been uniformly held that there is no property right in any private citizen or group to wild game or to freely-swimming migratory fish in navigable waters.").

This lack of any cognizable right to fish for pompano is especially applicable within the EEZ, where the ability to fish is "a matter of governmental permission, rather than a property right." Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1380 (Fed. Cir. 2004). Even if, arguendo, some common-law right to fish for pompano existed before, it ceased to exist once the Act was enacted. Id. at 1380 ("We are not persuaded by American Pelagic's contention that there exists a historical common law right to use vessels to fish in the EEZ that was not abrogated by the Magnuson Act."). Beyond the absence of any constitutional right based on these facts, Plaintiff fails to state a claim for other reasons, as well.

### 1.  Equal Protection

Plaintiff's equal protection claim is that the pompano regulations "discriminate" in favor of out-of-state vessels. This is pre-empted by § 1856(a)(3)(A)(i), which prevents Florida from regulating out-of-state vessels in the EEZ. It would seem Plaintiff's real issue is with how the Act is written, not how Florida regulates within the Act's structure. Aside from that, in order to receive heightened scrutiny under the equal protection clause, Plaintiff would have needed to allege that the regulations

burden a suspect class or a fundamental right. "Florida fishermen" are not a suspect class and fishing is not a fundamental right. Sisk v. Texas Parks & Wildlife Dep't, 644 F.2d 1056, 1058 n.5 (5th Cir. 1981) (fishing "is not a fundamental right nor is the class of commercial fishermen a suspect class"); Vickers v. Egbert, 359 F. Supp. 2d 1358, 1361-62 (S.D. Fla. 2005) ("Fishing, whether commercial or recreational, is not a fundamental right and those engaged in these activities are not a suspect class."). This means the pompano regulations are reviewed for a rational basis and must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).

The purpose of the pompano regulations is stated within F.A.C. 68B-35.001(1): "The purpose and intent of this chapter are to protect and conserve Florida's pompano … and assure the continuing health and abundance of these species." F.A.C. 68B-35.001(1). The purpose of the PEZ and pompano endorsement is elaborated further in the exhibit filed with the Amended Complaint:

> In early 2000, the Commission received reports of illegal gillnetting of Florida pompano in state waters. Since gill nets are an allowable gear in federal waters, illegal state waters harvest was difficult to distinguish from legal federal fisheries activities. In order to address this, FWC created the Pompano Endorsement Zone (PEZ), which is the only area in the state that had a legal, federal waters Florida pompano gill net fishery verified by observer ride-alongs.

(ECF 54-1 at 13.) The need to prevent pompano overfishing provides a rational basis for the State to create the PEZ so it can better distinguish the legal and illegal use of gill nets. See, e.g., Solis v. Miles, 524 F. Supp. 1069, 1078 (S.D. Tex. 1981) ("The regulations do not directly affect or protect Texas redfish and speckled sea trout populations except insofar as they aid in the enforcement of the ban on commercial fishing. By regulating the importation and sale of redfish and speckled sea trout, the state seeks to prevent circumvention of its law. This is a legitimate state interest.").

As for the requirement to also *land* the pompano within the PEZ, this is necessary because otherwise, simultaneous possession of pompano and a gill net in State waters is prohibited by the gill-

net ban as well as F.A.C. 68B-35.0035(2)(b). Where, as here, regulatory line-drawing "does not appear irrational" and the plaintiff "has not shown that the consequences are in any respect dire," a court "will leave that line drawing to the agency's discretion." Leather Indus. of Am., Inc. v. EPA, 40 F.3d 392, 409 (D.C. Cir. 1994)). See, e.g. Yakutat, Inc. v. Evans, C02-1052R, 2003 WL 1906336, at *3–4 (W.D. Wash. Apr. 10, 2003), aff'd sub nom Yakutat, Inc. v. Gutierrez, 407 F.3d 1054 (9th Cir. 2005) (regulatory line drawn on Pacific cod fishing was not irrational, and even if it caused loss of plaintiff's investment "economic injury is not sufficient" to overturn decision on fishery management).

Plaintiff is essentially claiming that because the Magnuson Act prevents regulation of out-of-state vessels, Florida should not bother regulating *any* vessel or else it will disadvantage those registered in-state. Florida cannot be made to adopt this "all or none" position. Regardless of whether Plaintiff agrees with the purpose or effectiveness of the pompano regulations, there is a rational basis for them nonetheless. Beatie v. City of N.Y., 123 F.3d 707, 712-13 (2d Cir. 1997) ("We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, because the problem could have been better addressed in some other way, or because the statute's classifications lack razor-sharp precision. Nor will a statute be overturned on the basis that no empirical evidence supports the assumptions underlying the legislative choice.").

### 2. Supremacy Clause

The inapplicability of the supremacy clause, but to recap, the clause does not apply because it is the federal government itself that gave Florida the ability through § 1856(a)(3)(A)(i) to regulate state-registered vessels within the EEZ. Florida has not done anything beyond what the Act allows. There is no allegation that pompano are in need of federal management and conservation under the Act and there is no FMP, so there is nothing that could pre-empt the State's regulations. On the other hand, the Act *does* pre-empt any effort to regulate out-of-state vessels within the PEZ despite Plaintiff's allegations that the pompano regulations unfairly discriminate in favor of those vessels.

### 3. <u>Commerce Clause</u>

A plaintiff can state a claim under the commerce clause by establishing that the challenged state action "has extraterritorial effects that adversely affect economic production (and hence interstate commerce) in other states." <u>Cloverland–Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.</u>, 462 F.3d 249, 261–62 (3d Cir.2006) (citing <u>Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.</u>, 476 U.S. 573, 580 (1986)). A plaintiff can also state a claim by establishing that "the object of the law is local economic protectionism, in that it disadvantages out-of-state businesses to benefit in-state ones." <u>Id.</u> at 262 (citing <u>C & A Carbone, Inc. v. Town of Clarkstown, N.Y.</u>, 511 U.S. 383, 390 (1994)). Taking the latter first, there is no economic protectionism because Plaintiff concedes that in-state and out-of-state vessels are equally subject to the PEZ landing requirement that forms the basis of this claim. (ECF 54 at pp. 14-15) (alleging the regulations seek "to prohibit out of state vessels (**and** Florida registered vessels) from using any Florida port" outside the PEZ when landing pompano.) (emphasis added).

As for the former, there are no allegations that the challenged regulations have any adverse effect on economic production in other states, nor is it in any way clear why requiring both in-state and out-of-state vessels to land pompano in an area *within the same state* would be an interstate commerce issue. Plaintiff's reliance on other cases involving conflicts with existing FMPs does not provide any factual basis for his own claim under the commerce clause. His "bare bones allegations and threadbare recitals of a claim" under the clause fail to state a violation. <u>Incredible Invs., LLC v. Fernandez-Rundle</u>, 28 F. Supp. 3d 1272, 1288–89 (S.D. Fla. 2014).

### 4. <u>Injunctive Relief</u>

Last, the Amended Complaint includes a count for preliminary and permanent injunctive relief based on the same facts. (ECF 54 at p. 15.) Plaintiff fails to state a claim because he has failed

to allege any of the elements for either form of injunctive relief. Lane v. Bayview Loan Servicing LLC, 2:18-CV-1352-RDP, 2018 WL 6446643, at *7 (N.D. Ala. Dec. 10, 2018).

WHEREFORE, Defendant respectfully requests that this Court dismiss the Amended Complaint with prejudice and award any such other relief as it deems just and equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed via CM/ECF and served upon David Paul Horan, Esq. at david@horan.law this 19th day of July 2021.

Respectfully Submitted,

ASHLEY BROOKE MOODY
ATTORNEY GENERAL

Shane Weaver
SHANE WEAVER, ESQ.
Senior Assistant Attorney General
Florida Bar No. 907421
Office of the Attorney General
1515 N. Flagler, Suite 900
West Palm Beach, Florida 33401
Tel. (561) 268-5216
Fax (561) 837-5102
shane.weaver@myfloridalegal.com

RHONDA E. PARNELL, ESQ.
Assistant General Counsel
Florida Fish & Wildlife Conservation Commission
Florida Bar No. 535249
620 South Meridian Street
Tallahassee, Florida 32399-1600
Tel. (850) 487-1764
Fax (850) 487-1790
Rhonda.Parnell@myfwc.com