## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 4:21-cv-10009-JEM/Becerra

**TIM RANDOLPH DANIELS,**

     **Plaintiff,**

**v.**

**ERIC SUTTON, EXECUTIVE DIRECTOR
OF THE FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION,**
**in his official capacity,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

**THIS MATTER** is before the Court on Defendant Eric Sutton's ("Defendant"), Motion to Dismiss Amended Complaint ("Motion to Dismiss"), ECF No. [64].  Plaintiff Tim Randolph Daniels ("Plaintiff") filed his Response to Defendant's Motion to Dismiss, ECF No. [71], and Defendant filed his Reply, ECF No. [74].  Pursuant to 28 U.S.C. § 636, the Honorable Jose E. Martinez, United States District Judge, referred this Motion to Dismiss to the undersigned.  ECF No. [66].  The undersigned also held oral argument on this matter (the "Hearing"), ECF No. [89].  For the reasons stated below, the undersigned respectfully recommends that Defendant's Motion to Dismiss be **DENIED.**

## I.     BACKGROUND

The Magnuson Act grants the federal government exclusive management of marine fisheries in federal waters.  *See* 16 U.S.C. § 1801 *et seq.* (1976).  Under the statute, federal waters include the Exclusive Economic Zone ("EEZ"), which begins at the outer boundary of each State's territorial waters and extends 200 nautical miles.  *See* Proclamation No. 5030, 48 Fed. Reg. 10605 (Mar. 10, 1983).  Although the EEZ generally begins within three nautical miles from a State's territorial border, Florida's border in the Gulf of Mexico extends approximately nine nautical miles from the coastline.  Art. II, § 1(a), Fla. Const.  The State of Florida retains jurisdiction to regulate fisheries within its State territorial waters before the EEZ begins.  *See* 16 U.S.C. § 1856(a)(1).  Within the EEZ, the Magnuson Act empowers the federal government, through its Regional Management Fishery Councils, to create a fishery management plan ("FMP") for certain species of marine life in need of conservation and management.  16 U.S.C. § 1852(h)(1).  In addition, under the Magnuson Act, "[a] State may regulate a fishing vessel outside the boundaries of the State . . . [if t]he fishing vessel is registered under the law of that State, and [] there is no fishery management plan or other applicable federal fishing regulations for the fishery in which the vessel is operating."  16 U.S.C.A. § 1856(a)(3)(A).

In 2001, the Florida Fish and Wildlife Conservation Commission ("FWC") promulgated a series of Administrative Codes regulating the commercial fishing of pompano (the "Florida Pompano Regulations").  *See* F.A.C. 68B–35.001 *et seq*.  While gill nets are permitted in federal waters, the Florida Constitution prohibits the use

of gill nets in State waters.  *See* Art. X, § 16, Fla. Const.  Accordingly, the FWC enacted the Florida Pompano Regulations in "[r]esponse to reports of illegal gillnetting in state waters" and to address the difficulty in distinguishing between permissible federal activity and illegal State activity.  ECF No. [54-1] at 11.

Under these regulations, the FWC created and defined a zone within the EEZ in the Gulf of Mexico, between Cape Sable and Hurricane Pass in Collier County, called the Pompano Endorsement Zone ("PEZ").  *See* F.A.C. 68B–35.005.  The Florida Pompano Regulations impose various restrictions on commercial pompano fishing in and out of the PEZ where the fishing vessel does not have a "pompano endorsement." Specifically, a Florida-registered vessel without a pompano endorsement cannot fish within the PEZ and is prohibited from using gill and entangling nets in the rest of the EEZ.  *See id.*  However, if a Florida-registered vessel has a pompano endorsement, not only may they fish in the PEZ, but they are also legally able to use gill nets to capture an unlimited number of pompano within the PEZ.  *See id.*  These regulations only apply to owners of vessels registered in Florida; a vessel registered in another State is not subject to any of the Florida Pompano Regulations within the EEZ.

Plaintiff brings this action alleging that F.A.C. 68B–35.002(10), which defines the PEZ, and F.A.C. 68B–35.005, which sets out the regulations for fishing pompano in the PEZ with and without a pompano endorsement, violate the Equal Protection Clause, Supremacy Clause, and Commerce Clause of the United States Constitution due to their discriminatory impact on Florida residents and on interstate commerce, and because they conflict with the Magnuson Act.

Specifically, on April 14, 2020, the FWC arrested Plaintiff for violating one of the Florida Pompano Regulations. Plaintiff was aboard his Florida-registered vessel when the FWC approached and boarded his vessel after observing that the vessel had "entangling nets and pompano outside of the [PEZ]." ECF No. [54-1] at 3. Plaintiff confirmed to the FWC that the "sole purpose" of the trip was to harvest pompano and agreed with the FWC officer that his vessel was located outside the PEZ. *Id.* at 4. However, when the FWC officer indicated that Plaintiff was in violation of F.A.C. 68B–35.004(4) given the "goal of targeting pompano, having entangling nets onboard, [and] being outside of the SPZ (special permit zone) for use of those entangling nets[,]" Plaintiff indicated he was unaware of the regulation. *Id.* at 4–5. The Florida Pompano Regulation for which Plaintiff was arrested, F.A.C. 68B–35.004(4), is not challenged in this action, but sets out the allowable and prohibited gear for fishing pompano within and without State waters. *See* F.A.C. 68B–35.004(4).

## II.    PROCEDURAL HISTORY

Plaintiff's first Complaint alleged that the Florida Pompano Regulations violate the Equal Protection Clause, the Supremacy Clause, and the United States Constitution. *See* ECF No. [1] at 8–9.[1] The District Court adopted the undersigned's

---

[1] Plaintiff's first Complaint named Florida Keys Commercial Fisherman's Association, LLC ("FKCFA") as a plaintiff. The undersigned recommended dismissal as to FKCFA for lack of standing, as FKCFA does not exist. ECF No. [53] at 8. While Plaintiff FKCFA argued this was a "scrivener's error" and FKCFA is a registered fictitious name of Monroe County Commercial Fishermen, Inc., the undersigned found this argument unpersuasive. *Id.* Additionally, Plaintiff named the FWC as a defendant in the first Complaint. The undersigned recommended dismissal without prejudice as to the FWC because as a state agency it enjoys Eleventh Amendment immunity, and it is not a person subject to liability under Section 1983. *Id.* at 6–7.

Recommendation that the Complaint be dismissed without prejudice on various grounds. ECF Nos. [53], [56]. First, Plaintiff failed to plead an injury sufficient to demonstrate standing as the original Complaint did not allege that he had been arrested. ECF No. [53] at 7–8. Second, Plaintiff failed to demonstrate subject matter jurisdiction because Plaintiff failed to "clearly articulate how Defendants' actions have violated the Magnuson Act" giving rise to a substantial question of federal law. *Id.* at 9–10. Finally, the Complaint constituted a "shotgun pleading" such that the Complaint "does not adequately provide Defendants with notice" of the underlying claims and factual allegations. *Id.* at 11. After the undersigned filed a Report and Recommendation recommending dismissal but before the District Court ruled, Plaintiff filed the Amended Complaint. ECF No. [54]. The District Court accepted the Amended Complaint, the operative pleading now subject to the instant Motion. ECF No. [56] at 2.[2]

### III.   ANALYSIS

The Amended Complaint realleges that two of the Florida Pompano Regulations are prohibited by the Equal Protection Clause, Supremacy Clause, and Commerce Clause of the United States Constitution. Specifically, the Amended Complaint alleges that the Florida Pompano Regulations are contrary to federal law,

---

[2] Plaintiff initially named "State of Florida Fish and Wildlife Conservation Commission Individual Members in their Official Capacities" as defendants. However, following the Parties' representations during a Status Conference that they had reached an agreement to exclude individual FWC members from the litigation, the Court entered an order recognizing Daniels, individually, as the sole Plaintiff in this matter and Sutton, in his official capacity, as the sole Defendant in this matter. *See* ECF Nos. [86], [92].

discriminate against Florida citizens in that its limitations only apply to the detriment of owners of Florida-registered vessels, and contain landing restrictions for all vessels, regardless of State of registration, which directly impacts interstate commerce.

Defendant's instant Motion sets out five grounds for dismissal of Plaintiff's Amended Complaint. First, Defendant contends that Plaintiff still does not have standing to bring suit because he fails to sufficiently allege injury, causation, and redressability requirements of standing. *See* ECF No. [64] at 6–8. Second, Defendant argues there is no substantial federal question to trigger subject matter jurisdiction because the only federal issue is premised on Plaintiff's misreading of the Magnuson Act. *See id.* at 9–13. Third, Defendant alleges the Amended Complaint violates the Rule 8 pleading standards. *Id.* at 14. Fourth, Defendant contends that Plaintiff's claims are time-barred because the Florida Pompano Regulations have been in place since 2001, and Plaintiff knew or had reason to know of them since at least 2004. *See id.* at 14–16. Finally, Defendant argues that Plaintiff failed to state a claim as to his Equal Protection, Supremacy Clause, and Commerce Clause claims, as well as his claim for injunctive relief. *See id.* at 16–22.

In his Response, Plaintiff counters that he has standing because he was arrested pursuant to the Florida Pompano Regulations, an allegation that was not contained in the first Complaint. ECF No. [71] at 7. Second, Plaintiff argues that he has established federal subject matter jurisdiction because his action is based and relies on the Magnuson Act. *See id.* at 7–11. Third, as to whether Plaintiff has

complied with Rule 8, Plaintiff responds that the Amended Complaint addresses the issues previously raised by the Court. *Id.* at 11–12. Fourth, Plaintiff responds to Defendant's statute of limitations defense by asserting that "Florida's four-year [s]tatute of [l]imitations applies to such claims of deprivation of rights under [Section] 1983," apparently relying on Plaintiff's arrest date to establish that the claim is within that four year period. *Id.* at 12. Finally, Plaintiff argues that he has sufficiently pled his causes of action by challenging the purpose of the Florida Pompano Regulations, and reasserting that there is a conflict between the Magnuson Act and these regulations. *See id.* at 13–16.

In the Reply, Defendant argues that Plaintiff's standing arguments fail because Plaintiff was arrested for violating a regulation not challenged in the Amended Complaint and he cannot show an injury connected to the Commerce Clause. ECF No. [74] at 5–6. As to subject matter jurisdiction, Defendant reiterates that Plaintiff misreads the Magnuson Act and that the cases cited by Plaintiff are distinguishable because those cases concerned situations where an FMP was already in place, unlike here. *Id.* at 6–7. Defendant then argues that Plaintiff's admitted non-compliance with Rule 8 shows dismissal is appropriate. *Id.* at 8. As to Defendant's claim that the action is time-barred, Defendant argues that Plaintiff's response of "just two sentences" is not "a serious effort to refute Defendant's statute of limitations defense." *Id.* Finally, Defendant argues that Plaintiff fails to state a claim because (1) he did not "establish that the regulations lack a rational basis" as to Equal Protection, (2) Plaintiff continues to misread the Magnuson Act's grant of

State authority as to the Supremacy Clause, and (3) Plaintiff cannot broaden his Commerce Clause claim to include how pompano may be harvested. *See id.* at 9–11. Defendant contends that Plaintiff's failure to address certain of Defendant's arguments render those defenses admitted by default. *See* ECF No. [74].

For the reasons stated below, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED**.

## A.   Plaintiff Has Standing To Bring Suit.

To establish standing, a plaintiff must show "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury must be "concrete and particularized," such that it "affect[s] the plaintiff in a personal and individual way." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112–13 (11th Cir. 2021). Moreover, a "plaintiff must demonstrate standing for each claim and for each form of relief that is sought." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (quoting *Town of Chester, N.Y. v. Laroe Ests.*, 137 S. Ct. 1645, 1650 (2017)). Further, when a plaintiff seeks declaratory or injunctive relief, a plaintiff must show that there is "a sufficient likelihood that he [or she] will be affected by the allegedly unlawful conduct in the future." *Sierra*, 996 F.3d at 113 (quoting *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004)).

Defendant challenges Plaintiff's standing on various grounds. First, Defendant argues that Plaintiff has not established an injury as to his Commerce Clause claim because Plaintiff does not allege any facts concerning his involvement in interstate commerce or commercial fishing of pompano, or any personal economic impact of the Florida Pompano Regulations. ECF No. [64] at 7. According to Defendant, although Plaintiff alleges that the Florida Pompano Regulations interfere with commerce between the States, "the only allegation connecting Plaintiff himself to the regulations in any way is that he was arrested while still at sea for harvesting pompano with a gill net outside of the PEZ." *Id.* at 6.

As to this challenge, the Court finds that the Amended Complaint sufficiently alleges injury. As Plaintiff notes, he was arrested while aboard his commercial fishing vessel, after which he and his crew were required to cease fishing and return to port. This is an "injury fairly traceable to the challenged action." ECF No. [71] at 7. Indeed, the threat of arrest alone would be sufficient to establish the injury requirement of standing. *See Bischoff v. Florida*, 242 F. Supp. 2d 1226, 1233 (M.D. Fla. 2003) ("[T]he fact that [plaintiffs] were threatened with arrest for engaging in a demonstration is proof of a concrete injury to meet the 'injury in fact' requirement.").

Second, Defendant challenges the request for declaratory or injunctive relief by arguing that there is no injury. Here, the Court finds that Plaintiff's occupation as a commercial fisherman and the continuing existence of the regulations, and thus, the continuing threat of arrest, all indicate that there is "sufficient likelihood" he will

face harm in the future.  *See Birmingham Bd. of Educ.*, 904 F.3d at 1264.  As such, there is standing as to the declaratory action.

Third, Defendant asserts that Plaintiff cannot show redressability because even if the regulations were not in place, Plaintiff still could not return to a Florida port with gill nets to land pompano, and "striking down the PEZ and taking pompano endorsements [from] those who have them would not give Plaintiff any new rights, it would only remove rights given to others by the regulations."  ECF No. [64] at 7–8. As to redressability, the Court finds that Plaintiff has satisfied redressability because if the Court declares the challenged regulations unconstitutional, Plaintiff would face the same treatment as non-Florida registered vessels regarding legal options for harvesting pompano and returning to land.  Although Plaintiff's allegations are not a model of clarity, they are sufficient at this conjuncture.  *See Doe v. Hobson*, 17 F. Supp. 3d 1141, 1150–51 (M.D. Ala. 2014) (where defendants argued that different provisions of an Alabama statute, as opposed to the provision challenged by plaintiffs, would cause the alleged injury, the court noted that "[d]efendants' criticism is persuasive" but that "[t]he court elects not to parse these . . . redressability problems on a motion to dismiss, [and instead] prefers the resolution . . . at the summary judgment juncture").

Fourth, Defendant argues that Plaintiff cannot satisfy the redressability nor causation elements as to his Equal Protection claims.  Specifically, Defendant argues that the reason Florida can only apply the Florida Pompano Regulations to Florida-registered vessels is the Magnuson Act, not the regulations themselves.  ECF No. [64]

at 8.   This argument, however, misses the gravamen of Plaintiff's claim of discriminatory treatment.   Defendant's argument that the Magnuson Act permits this discriminate treatment might be correct, but for purposes of establishing standing at this stage, Plaintiff has sufficiently plead redressability and causation.

Finally, Defendant argues that Plaintiff lacks standing to bring his claim on behalf of other individuals.   Although the Amended Complaint is not particularly clear on this point, neither paragraph thirteen nor the Prayer for Relief at page fourteen (those noted by Defendant in his Motion) appear to state a claim on behalf of others.   To the extent that anything in the Amended Complaint leaves the impression that Plaintiff seeks to raise claims on behalf of others, it should be clear that Plaintiff cannot and has not adequately pled a claim for others.   Again, the undersigned notes, as it did in the initial Report and Recommendation, that any attempt to allege potential injuries sustained by non-parties is insufficient to establish standing.   *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").   However, that does not appear to be an issue in the Amended Complaint as Plaintiff has now alleged his own arrest and no longer claims to be representing the interests of others.   Therefore, given the additional allegations in the Amended Complaint, Plaintiff has sufficiently pled standing.

**B.      The Amended Complaint Sufficiently Alleges Subject Matter Jurisdiction.**

When subject matter jurisdiction is challenged under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction.  *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).  "All well-pleaded allegations must be taken as true for purposes of determining the existence of federal jurisdiction." *Gibson v. Firestone*, 741 F.2d 1268, 1270 (11th Cir. 1984) (citing *Goosby v. Osser,* 409 U.S. 512, 521–22, 521 n. 7 (1973)).  Moreover, allegations may be "adequate to invoke federal subject matter jurisdiction" even if such allegations are insufficient to state a claim for relief.   *Id.*   The Supreme Court has made clear that "[Section] 1343 authorizes a civil action to 'redress the deprivation, under color of any State . . . regulation . . . of any right . . . secured by the Constitution of the United States.'" *Hagans v. Lavine*, 415 U.S. 528, 535–36 (1974) (quoting 42 USC §1343(3)). Jurisdiction is proper if the "constitutional claim [is] of sufficient substance to support federal jurisdiction" and "[a] claim is insubstantial only if its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy."  *Id.* at 538 (internal citation and quotations omitted).

Defendant contends that Plaintiff lacks subject matter jurisdiction because Plaintiff's claims are based on his misapplication of the Magnuson Act, and thus, are "plainly insubstantial."   ECF No. [64] at 9.   Specifically, Defendant argues that Section 1856(a)(3)(A)(i) of the Magnuson Act "allows states to regulate vessels within the EEZ under certain circumstances," including when the "fishing vessel is

12

registered under the law of that State, and [] there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating . . . ." *Id.* at 3 (emphasis removed) (quoting 16 U.S.C. § 1856(a)(3)(A)). Defendant argues that this provision of the Magnuson Act must be given its plain meaning, such that "Florida is federally permitted to regulate State-registered vessels within the EEZ." *Id.* at 9–10. Accordingly, Defendant argues that there is no federal question warranting jurisdiction, but rather "Plaintiff's own meritless belief that Florida cannot regulate pompano in the EEZ even though the fishery does not need federal management and conservation and has no FMP." *Id.* at 10. Defendant also cites to a 2000 letter to the FWC in support of his argument that a plain reading of Section 1856(a)(3)(A)(i) is proper and renders Plaintiff's claims meritless. *Id.* at 13.

Defendant also argues that the cases cited in the Amended Complaint for the proposition that States cannot regulate in the EEZ absent explicit delegation are distinguishable because those cases concern situations where an FMP was already in place, which is not the case here as there is no FMP. *See id.* at 10–12. For instance, Defendant argues that *United Cook Inlet v. Nat'l Marine Fisheries Serv.*, 837 F.3d 1055 (9th Cir. 2016) is inapplicable because the fishery at issue in *United Cook Inlet* was found to be in "need of conservation and management" which triggered the federal Government's obligation to create an FMP, which has not occurred here. *Id.* at 10–11; *see also id.* at 12 (noting that *Bateman v. Gardner*, 716 F. Supp. 595 (S.D. Fla. 1989), *aff'd*, 922 F.2d 847 (11th Cir. 1990) and *Se. Fisheries Ass'n, Inc. v.*

*Martinez*, 772 F. Supp. 1263 (S.D. Fla. 1991), also were cases with pre-existing FMPs). Moreover, Defendant argues that Plaintiff misunderstands the Ninth Circuit's decision in *United Cook Inlet* to stand for the proposition that an FMP is always required for States to regulate any fishery within the EEZ. *Id.* at 11. Instead, Defendant cites to *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136 (9th Cir. 2015) for support that State regulation in the EEZ without an FMP in place is proper. *See id.* at 12.

In his Response, Plaintiff argues that, "[t]o delegate authority over a federal fishery to a state, [the federal Government] must do so expressly in an FMP." ECF No. [71] at 9 (quoting *United Cook Inlet*, 837 F.3d at 1063). Plaintiff also reasserts that *Bateman* and *Martinez*, cases cited in the Amended Complaint, are applicable to Plaintiff's claims because those cases also concerned Florida laws where "only Florida registered vessels were being arrested." *Id.* at 10–11. Plaintiff alleges a "violation of civil rights under color of state law" and asserts that "jurisdiction is proper . . . under 28 USC §1331, 1343, 42 USC §1983." ECF No. [54] ¶¶ 1, 3. More specifically, Plaintiff alleges violations of the Equal Protection Clause, Supremacy Clause, and Commerce Clause due to the Florida Pompano Regulations facially discriminating based on one's State of residence and restricting all vessels' landing options.

In recommending that the initial Complaint be dismissed, the undersigned noted that "Plaintiffs' Complaint appears to hinge on Defendants' violation of the Magnuson Act; however as plead, Plaintiffs do not clearly articulate how Defendants' actions have violated the Magnuson Act" since "Plaintiffs' Complaint appears to

acknowledge that, in the absence of an FMP, the Magnuson Act only allows states to regulate vessels within the EEZ that are registered to that state." ECF No. [53] at 9. Whereas Plaintiff's initial Complaint left the Court "unable to ascertain whether Plaintiffs' allegations involve a substantial federal question," *id.*, Plaintiff now clearly alleges, among other things, that Florida cannot regulate in the EEZ absent explicit delegation of authority. *See* ECF No. [54] ¶ 8. In addition, Plaintiff not only challenges whether Florida is properly regulating those waters under the Magnuson Act, he also challenges that those Regulations violate the Equal Protection, Supremacy and Commerce Clause. To that end, the Court cannot find that the claims are so implausible as to merit dismissal at this stage.

Indeed, a central dispute between the Parties that bears on the issue of subject matter jurisdiction is the proper interpretation of Section 1856(a)(3)(A) of the Magnuson Act, which reads:

> [a] State may regulate a fishing vessel outside the boundaries of the State in the following circumstances: **(A)** The fishing vessel is registered under the law of that State, and (i) there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating; or (ii) the State's laws and regulations are consistent with the fishery management plan and applicable Federal fishing regulations for the fishery in which the vessel is operating.

16 U.S.C.A. § 1856(a)(3)(A). Defendant argues that "the plain language" of Section 1856(a)(3) means "Florida is federally permitted to regulate State-registered vessels within the EEZ" and thus Plaintiff cannot show federal question jurisdiction because his claims are premised on an improper reading of the Magnuson Act, *i.e.* that a State cannot regulate in the EEZ unless it has explicit delegated authority to do so. *See*

ECF No. [64] at 9–11.  The issue for the Court in determining this issue, however, is not whether Plaintiff's position is correct, but whether it is insubstantial, such that dismissal is warranted.  The Court cannot make that finding at this stage.

Indeed, in at least one case relied on by Plaintiff, the Eleventh Circuit indicated that it read the subsection at issue "to allow state regulation of vessels registered under state law and fishing in *state* territorial waters" as opposed to *federal* waters. *Se. Fisheries Ass'n, Inc. v. Chiles*, 979 F.2d 1504, 1508 n.4 (11th Cir. 1992) (emphasis added).  The Court noted that although the defendants argued that the provision evidences Congress' intention to allow States to regulate fishing within the EEZ, it disagreed, noting that "Section 1856(a)(3) is the only reference this court has found in the Magnuson Act referring to permissible state regulation in any waters" and the court "do[es] not believe Congress intended to leave the door open for state regulation in the EEZ."  *Id.*[3]  Accordingly, Plaintiff's interpretation of Section 1856(a)(3), which is the basis of the federal claim, is not insubstantial such as to warrant dismissal at

---

[3] Although there is the limited authority within the Eleventh Circuit concerning the interpretation of Section 1856(a)(3), the undersigned notes that two other district courts have read this provision of the Magnuson Act to permit state regulation of state-registered vessels in the EEZ.  *See Jenson v. Locke, et al.*, No. 3:08-CV-00286-TMB, 2009 WL 10674336, at *11 (D. Alaska Nov. 9, 2009) ("[I]f no fishery management plan applies, according to the express terms of the Magnuson-Stevens Act, the Act does not preempt but rather authorizes the State of Alaska to promulgate regulations to govern this historic net fishery."); *Louisiana Seafood Mgmt. Council, Inc. v. Foster*, 917 F. Supp. 439, 444 (E.D. La. 1996) (rejecting an "interpretation [of the Magnuson Act that] suggests a 'free for all' scenario where if there is no FMP, nothing can be done by the state to [regulate fishing]" as "[t]his interpretation would handcuff the state's abilities to protect valuable marine resources" and would violate "the spirit and purpose of the Magnuson Act").

this stage.  Although Plaintiff's interpretation of the Magnuson Act may ultimately be found to be incorrect, the standard has been met at this stage such that the matter should not be dismissed on this ground.  *See Firestone*, 741 F.2d at 1271 (finding appellants' claims were subject to federal jurisdiction under 28 U.S.C. § 1343(3) where "appellants have alleged deprivation of their first amendment right to vote as well as their fourteenth amendment rights to due process and equal protection.").  Moreover, even if the Court were to accept Defendant's reading of the statute, the statute could not of course permit Florida to regulate in a manner that would otherwise violate the Equal Protection, Supremacy, or Commerce Clause.

### C.   Plaintiff's Amended Complaint Survives A Rule 8 Challenge Because It Gives Defendant Sufficient Notice Of The Claims And Supporting Allegations.

Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the facts" in order to "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  Fed. R. Civ. P. 8(a).  While a complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions . . . .  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Notably, "[t]he primary purpose of Rule 8's pleading requirements is to provide a defendant with adequate notice which will enable the adverse party to answer and prepare for trial."  *Benjamin v. Holy Cross Hosp.*, No. 11-62142-CIV, 2012 WL 1900026, at *2 (S.D. Fla. May 24, 2012).

Additionally, the Eleventh Circuit has criticized "shotgun pleadings," or "pleadings . . . that . . . fail to one degree or another, and in one way or another, to

give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). However, "[a] dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1325 (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996)) (emphasis in original).

Defendant argues that dismissal is warranted because "Plaintiff devotes over 6 pages and 32 paragraphs solely to legal arguments in support of his claims" and so the Amended Complaint "violat[es] the 'short and plain statement' requirement" of Rule 8. ECF No. [64] at 14. Plaintiff responds that, "[i]n order to address the plethora of factual and legal arguments" in Defendants' first motion to dismiss, "more than a short and plain statement" is needed. ECF No. [71] at 11. According to Plaintiff, "[t]here is simply no way to address the alleged factual and legal 'deficiencies' argued by Defendant in a 'short and plain statement.'" *Id.* at 12. Plaintiff also alleges that the Amended Complaint seeks to address the issues that the undersigned noted in the prior Report and Recommendation. *Id.* at 11. In the Reply, Defendant argues that Plaintiff's admitted non-compliance with Rule 8 shows dismissal is appropriate because "Plaintiff cites no case law for this notion that Rule 8 is situational or optional, nor does any exist." ECF No. [74] at 8.

In recommending dismissal of Plaintiff's first Complaint, the undersigned found that, "[a]s presently plead, the [Complaint] does not adequately provide

Defendants with notice of the grounds upon which each claim is based in that all the claims are aggregated into one count."  ECF No. [53] at 11 (citing *Weiland*, 792 F.3d at 1323).  While the Amended Complaint "does not approach [the ideal in pleading], . . . it claims that the plaintiff has a case, and parts of it do a good enough job in telling what that case is to require the defendant[] to say 'either that that is not so, or something else is so.'"  *Weiland*, 792 F.3d at 1316.  Because Plaintiff's Amended Complaint adequately sets forth allegations of violations of the Equal Protection Clause, Supremacy Clause, and Commerce Clause, dismissal of the Amended Complaint is not warranted.  *See id.* at 1326 (finding dismissal under Rules 8(a)(2) and 10(b) inappropriate because "whatever their faults, these . . . counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted."); *Allen v. Life Ins. Co. of N. Am.*, 267 F.R.D. 407, 413 (N.D. Ga. 2009) (Dismissal of entire complaint under Rule 8(a) or Rule 10(d) not warranted "[e]ven though plaintiff's complaint is unnecessarily long and detailed," because "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.") (quoting *Conley v. Gibson,* 355 U.S. 41, 48 (1957), *abrogated in part by Twombly*, 550 U.S. 544)).

Indeed, the crux of the claims, at least by the undersigned's reading, are now clear enough to withstand a Rule 8 challenge.  Plaintiff challenges Defendant's interpretation of federal law to the extent that it allows the State of Florida to treat

its citizens in a manner that is allegedly discriminatory and that affects interstate commerce.  Thus, dismissal of the Amended Complaint for failure to comply with Rule 8 is not warranted. The Amended Complaint certainly has its shortcomings, but it passes Rule 8 muster.

### D. Defendant Cannot Meet His Burden To Show That Dismissal Based On A Statute Of Limitations Defense Is Warranted.

"[A] federal claim accrues when the prospective plaintiff knows or has reason to know of the injury which is the basis of the action." *Salas v. Pierce*, 297 Fed. App'x. 874, 877 (11th Cir. 2008) (quoting *McNair v. Allen,* 515 F.3d 1168, 1174 (11th Cir. (2008)).  "Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (citing *Cabral v. City of Miami Beach*, 76 So. 3d 324, 326 (Fla. 3d DCA 2011)).  Nevertheless, the statute of limitations may be raised by motion to dismiss if the facts on the face of the complaint demonstrate "that the statute of limitations bars the action." *Id.*; *see also Keira v. U.S. Postal Inspection Serv.*, 157 F. App'x 135, 136 (11th Cir. 2005) (stating that a complaint may be dismissed on the basis of a statute of limitations defense only when it is beyond a doubt that a plaintiff can prove no set of facts that toll the statute; *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal quotations omitted) ("[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred.").  However, "[a] district court may consider a document attached to a motion to dismiss without converting the motion to dismiss into one for

summary judgment if (1) the document is central to the plaintiff's claim, and (2) its authenticity is not challenged." *Henry v. Examworks Inc.*, No. 20-12268, 2021 WL 3440698, at *3 (11th Cir. Aug. 6, 2021) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).  Additionally, "[a] court may also take judicial notice of undisputed facts when ruling on a motion to dismiss." *Id.* (citing *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013)).

Defendant contends that Plaintiff's claims are time-barred.  ECF No. [64] at 14.  The parties agree that the applicable statute of limitations for Plaintiff's claims is four years, as determined by Florida's personal injury statute.  *See id.*; ECF No. [71] at 12.  While Plaintiff's arrest occurred within the last four years, Defendant argues that this is not the date on which the statute of limitations began to run.  *See* ECF No. [64] at 14–16.  Instead, Defendant contends the tolling of the statute of limitations began when "Plaintiff knew or should have known of the alleged constitutional violation[,]" which Defendant asserts was at least May 2004, when Plaintiff renewed his saltwater products license and pledged to "faithfully observe 'all laws and lawful regulations of this state . . .'"  *Id.* at 15; *see also* ECF No. [64-1]. Defendant attaches that license renewal to his Motion to Dismiss, as Exhibit A, and argues that "the license information is within the four corners of [Plaintiff's] pleading" since Plaintiff's arrest report, attached as an exhibit to the Amended Complaint, contained Plaintiff's vessel registration number and license number.  ECF No. [64] at 15.  Alternatively, Defendant asserts that the Court may take judicial notice of the document as a public record.  *Id.*

Plaintiff briefly responds to Defendant's statute of limitations defense by merely asserting that "Florida's four-year Statute of Limitations applies to such claims of deprivation of rights under [Section] 1983." ECF No. [71] at 12. Defendant argues in the Reply that Plaintiff's response of "just two sentences" is not "a serious effort to refute Defendant's statute of limitations defense" and so the claims should be dismissed. ECF No. [74] at 8.

While a court "may judicially notice matters of public record without converting a 12(b)(6) motion to dismiss into a motion for summary judgment under Rule 56," it "may not draw inferences from them at the motion to dismiss stage." *Boom v. Rosebandits, LLC*, No. 13-21506-CIV, 2013 WL 5928342, at *3 (S.D. Fla. Nov. 5, 2013) (citing *Stratford Holding, LLC v. Fog Cap Retail Invs., LLC,* 516 Fed. App'x. 874, at *1 (11th Cir. Apr. 16, 2013)). Defendant argues that Plaintiff's signed affirmation to observe State regulations in his license renewal makes clear that Plaintiff knew or should have known of the Florida Pompano Regulations since at least May 2004. However, such a conclusion would require an inference by the Court. Moreover, at this stage, there is insufficient information for the Court to determine whether Plaintiff actually knew or should have known of the regulations at issue, and as such, this determination should be left for the summary judgment stage.

### E.   Plaintiff Plausibly Alleges Violations Of The Equal Protection, Supremacy, And Commerce Clauses.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 915 (11th Cir. 2018) (quoting *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a "sheer possibility" that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Id.* Nor will "'naked assertion[s]' devoid of 'further actual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

As an initial matter, Defendant alleges that "the only way Plaintiff could have established a constitutional claim would have been to allege some other independent basis" since "the Magnuson Act [does not create] rights in this case." ECF No. [64] at 16. However, this Court has previously rejected such an argument:

> The Defendant's second argument that the Magnuson Act "does not create any rights, privileges, or immunities for individuals" is in error. The Magnuson Act was enacted to benefit and protect commercial fishermen like the Plaintiff. It mandated, under 16 U.S.C. § 1851(a)(4) that . . . "conservation management measures shall not discriminate between residents of different states". An action under § 1983 certainly provides a mechanism to address state interference with federally protected fishing rights under the Magnuson Act.
>
> The Plaintiff, a commercial fisherman, is the intended beneficiary of a federal statutory scheme that gives all United States fishermen the continued right to make use of the federal fishery resources of the EEZ. The violation of a federal right that is implicit in a statute's language and structure is as much a "direct violation" of a right as is the violation that is clearly set forth in the text of the statute. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989).

*Bateman v. Gardner*, 730 F. Supp. 1570, 1571–72 (S.D. Fla. 1990), *aff'd*, 922 F.2d 848 (11th Cir. 1990).  As such, the Court proceeds to review the three causes of action.

### i.  The Equal Protection Claim Is Sufficiently Pled.

There are three types of Equal Protection claims:

> (1) a claim that a statute discriminates on its face, in which plaintiff must show that there is no rational relationship between the statutory classification and a legitimate state goal; (2) a claim that neutral application of a facially neutral statute has a disparate impact, in which the plaintiff must prove purposeful discrimination; and (3) a claim that defendants are unequally administering a facially neutral statute.

*VTS Transp., Inc. v. Palm Beach Cnty.*, No. 9:15-CV-80560, 2016 WL 4250683, at *3 (S.D. Fla. Feb. 4, 2016) (citing *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987)).  Here, because Plaintiff's Equal Protection claim is premised on the allegation that the Florida Pompano Regulations are facially discriminatory (since they only apply to Florida-registered vessels), and Florida residents do not belong to a suspect class, the Florida Pompano Regulations are subject to rational basis review. *See Catron v. City of St. Petersburg*, No. 809-CV-923-T-23EAJ, 2009 WL 3837789, at *11 (M.D. Fla. Nov. 17, 2009) ("If a law neither affects a fundamental right nor targets a suspect class, a challenge to the law under the Equal Protection Clause receives rational basis review.").  "A challenged ordinance will survive rational basis review if it could have been directed toward some legitimate government purpose, even if that purpose did not actually motivate the enacting legislature." *Checker Cab Operators, Inc.*, 899 F.3d at 921.  Thus, to in order to state an Equal Protection claim, Plaintiff

must allege "that there is no rational relationship between the statutory classification and a legitimate state goal." *VTS Transp.*, 2016 WL 4250683, at *3.

Rational basis review is highly deferential to a defendant, while the Rule 12(b)(6) standard is highly deferential to a plaintiff. Indeed,

> [a] perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under Fed. R. Civ. P. 12(b)(6). The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if "relief could be granted under any set of facts that could be proved consistent with the allegations." The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

*Crafted Keg, LLC v. Sec'y of the Florida Dep't of Bus. & Prof'l Regulation*, No. 2:14-CV-14430, 2015 WL 11254293, at *2 (S.D. Fla. Jan. 15, 2015) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 459–60 (7th Cir. 1992)).

Nevertheless, courts have dismissed complaints where it is clear that the challenged act is rationally related to a legitimate purpose. *See, e.g., Checker Cab Operator*, 899 F.3d at 923 (affirming district court's dismissal for failure to state Equal Protection claim where "regulations of taxicabs [that] were more burdensome than those imposed on [ride-shares] . . . [were] rationally related to a legitimate government interest"); *Duva v. Bd. of Regents of the Univ. Sys. of Georgia*, 654 Fed. App'x. 451, 454 (11th Cir. 2016) (upholding the district court's dismissal of plaintiff's amended complaint, finding that plaintiff "failed to state a plausible claim for relief under the Equal Protection Clause" where plaintiff "failed to allege that the

individual defendants' purported age discrimination lacked a rational relationship to a legitimate state interest").  Dismissal is thus appropriate when it is clear that a plaintiff could never state a plausible claim for relief.  However, where a "Court is not prepared to conclude, after accepting all of Plaintiff's allegations as true, that Plaintiff cannot prevail *as a matter of law* . . . . the appropriate result . . . is to permit Plaintiff to conduct discovery."  *Crafted Keg, LLC*, 2015 WL 11254293, at *2 (emphasis added).

Defendant asserts that "[t]he need to prevent pompano overfishing provides a rational basis for the State to create the PEZ so [that] it can better distinguish the legal and illegal use of gill nets."  ECF No. [64] at 18.  In the Amended Complaint, Plaintiff alleges that "Defendants attempt to justify the State's extraterritorial fishery management regulation of the pompano harvest by relying on a specific sentence in the Magnuson Act, 16 U.S.C. § 1856(a)(3)."  ECF No. [54] ¶ 17.  Essentially, Plaintiff argues in the Amended Complaint that the State of Florida has enacted the Florida Pompano Regulations merely because it can and not because there is any need for the regulation.  Specifically, he argues that permitting certain vessels "to catch unlimited amounts of pompano (using fishing equipment prohibited by the Florida Constitution)" does not serve the purpose of preventing overfishing.  ECF No. [71] at 13–14.  Defendant counters in his Reply that Plaintiff's arguments are merely criticisms of the State's policy choices, which fail to overcome the "highly deferential" standard that State laws will be upheld except under the "most exceptional circumstances."  ECF No. [74] at 9 (quoting *Doe v. Moore*, 410 F.3d 1337,

26

1345 (11th Cir. 2005)).   Specifically, Defendant contends that the Magnuson Act contemplates the regulation of fisheries through "the opening or closing of geographic areas" and so it is rational for a State to do the same.   *Id.*   Moreover, Defendant argues that courts "leave [] line drawing to the agency's discretion."   *Id.* (quoting *Leather Indus. Of Am., Inc. v. EPA*, 40 F.3d 392, 409 (D.C. Cir. 1994)).

Although Plaintiff may indeed have a high bar to succeed on the merits as alleged, that is not the standard for dismissal at this stage.   Indeed, Plaintiff does allege that the State lacked any rational basis to regulate pompano fishing in the PEZ, and such allegations are sufficient at this stage of the litigation.   Indeed, when addressing similar challenges to the scope of the Magnuson Act and a state's right to regulate fisheries, courts have allowed the claims to proceed to summary judgment. *See, e.g., Bateman*, 716 F. Supp. at 596; *Se. Fisheries Ass'n, Inc. v. Mosbacher*, 773 F. Supp. 435, 437 (D.D.C. 1991).   Accordingly, Plaintiff's Equal Protection claim should proceed.

### ii.   **Plaintiff Plausibly Alleges A Supremacy Clause Violation.**

There are three types of preemption that would result in a violation of the Supremacy Clause: "express preemption, field preemption, and conflict preemption." *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1197 (11th Cir. 2011) (citing *Wis. Pub. Intervenor v. Mortier,* 501 U.S. 597, 604–05 (1991)).   Express preemption results when Congress has indicated its desire to preempt state law through explicit statutory language. *Williams v. Educ. Credit Mgmt. Corp.*, 88 F. Supp. 3d 1338, 1344 (M.D. Fla. 2015).   Field preemption exists "when federal regulation in a legislative

field is so pervasive that it can reasonably be inferred that Congress left no room for the states to supplement it." *Id.* Finally, conflict preemption occurs when "it is impossible to comply with both federal and state law," or when "state law stands as an obstacle to achieving the objectives of the federal law." *Id.*

Defendant challenges Plaintiff's Supremacy Clause claim by arguing that "the clause does not apply because it is the federal government itself that gave Florida the ability through [Section] 1856(a)(3)(A)(i) to regulate state-registered vessels within the EEZ." ECF No. [64] at 19. Defendant's argument is premised on the "the plain language" of Section 1856(a)(3), under which "Florida has not done anything beyond what the Act allows." *Id.* at 9, 19. Moreover, because "[t]here is no allegation that pompano are in need of federal management and conservation under the Act and there is no FMP," Defendant argues "there is nothing that could pre-empt the State's regulations." *Id.* at 19. In his Response, Plaintiff reasserts that there is a conflict between the Magnuson Act and the Florida Pompano Regulations. ECF No. [71] at 14–15. In the Amended Complaint, Plaintiff alleges that "[t]he Magnuson Act does not allow State fishery management in the United States EEZ unless the State is expressly authorized/delegated management of an EEZ fishery through a Magnuson Act [FMP]." ECF No. [54] ¶ 8. Thus, Plaintiff asserts that the challenged regulations are "in direct conflict with" and "contrary to the Magnuson Act's exclusive fishery management authority." *Id.* ¶ 15. Moreover, Plaintiff emphasizes that "[t]here is no federal law (Magnuson Act) or regulation that restricts the use of gill or entangling nets to harvest pompano in the United States EEZ." *Id.* ¶ 11.

Similar to the question of subject matter jurisdiction, the plausibility of Plaintiff's Supremacy Clause claim turns on the proper interpretation of Section 1856(a)(3)(A) of the Magnuson Act, and whether a State may regulate within the EEZ absent an FMP.  As discussed *supra* Section III.B, Section 1856(a)(3)(A) states, "[a] State may regulate a fishing vessel outside the boundaries of the State . . . [when t]he fishing vessel is registered under the law of that State, and [] there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating."  16 U.S.C.A. § 1856(a)(3)(A).  Moreover, although Defendant advocates for a plain reading of Section 1856(a)(3)(A), Plaintiff cites to the language in *Chiles* that suggests that the State may regulate State-registered vessels in State waters, only, not in the EEZ.  Indeed, "Congress . . . provided the states with an active role in managing the resources of the EEZ through their voting positions on a council; granted the ultimate responsibility for overseeing the program to the Secretary of Commerce; *and left nothing pertaining to the EEZ for the state to regulate*."  *Chiles*, 979 F.2d at 1509 (emphasis added); *see* ECF No. [54] ¶ 32 (citing same).  Moreover, this Court has recognized that Equal Protection claims are meritorious where the challenged regulation "directly conflicts with important purposes of [the] Magnuson Act, namely trying to prevent piecemeal extra-territorial state regulation and promoting uniformity in the EEZ."  *Martinez*, 772 F. Supp. at 1266–67.  Plaintiff's argument may not win in the final analysis, but it is sufficient at this stage.

Additionally, Defendant takes great issue with the fact that there is no FMP in place for pompano, arguing that Plaintiff's citation to *United Cook Inlet* is improper where here, "[g]iven the absence of a pompano FMP, the federal government explicitly gives Florida the authority to regulate State-registered vessels in the EEZ." *See* ECF No. [74] at 10. However, the fact an FMP was in place in *United Cook Inlet*, by itself, does not support Defendant's argument that the claims alleged here could *never* arise where there is no FMP in place. Again, while the presence or absence of an FMP may ultimately be dispositive on the merits of the claim, the undersigned is not convinced that the absence of an FMP renders Plaintiff's claims implausible. Accordingly, Plaintiff has plausibly alleged the Supremacy Clause claim.

### iii. The Amended Complaint Sufficiently Alleges A Violation Of The Commerce Clause.

While the Commerce Clause concerns the power of Congress to regulate commerce amongst the states, "[i]t is well settled . . . that the Commerce Clause also serves as a substantive restriction on permissible state regulation of interstate commerce" and thus has a "dormant[] aspect." *Amerijet Intern., Inc. v. Miami-Dade Cnty., Fla.*, 627 Fed. App'x. 744, 751–52 (11th Cir. 2015) (citing *Bainbridge v. Turner,* 311 F.3d 1104, 1108 (11th Cir. 2002)) (internal quotations omitted); *see also* U.S. Const. Art. 1, § 8, cl. 3. The Eleventh Circuit has set forth a two-tiered analysis for challenges under the Dormant Commerce Clause. Under the first tier, courts consider whether a state law "'directly regulates or discriminates against interstate commerce,' or has the effect of favoring 'in-state economic interests'" and if so, whether the law "'advance[s] a legitimate local purpose that cannot be adequately

served by reasonable nondiscriminatory alternatives.'" *Amerijet Intern.*, 627 Fed. App'x. at 752 (quoting *Island Silver & Spice, Inc. v. Islamorada,* 542 F.3d 844, 846 (11th Cir.2008). Under the second tier, courts consider "whether the state's interest in enacting the law 'is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits' under the undue burden test of *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970)." *Id.* (citing *Islamorada,* 542 F.3d at 846.). Moreover, "[a] state or local law may impermissibly discriminate against interstate commerce even if that law applies to all [regardless of one's State of residence]." *Fla. Transp. Services, Inc. v. Miami-Dade Cnty.*, 703 F.3d 1230, 1244 (11th Cir. 2012).

Defendant contends that Plaintiff's Commerce Clause claim fails since "there is no economic protectionism because . . . in-state and out-of-state vessels are equally subject to the PEZ landing requirement[.]" ECF No. [64] at 20. Further, Defendant argues that Plaintiff fails to allege that the Florida Pompano Regulations "have any adverse effect on economic production in other states, nor is it in any way clear why requiring both in-state and out-of-state vessels to land pompano in an area within the same state would be an interstate commerce issue." *Id.* (emphasis removed).

In the Amended Complaint, Plaintiff alleges that the Florida Pompano Regulations "prohibit Florida registered vessels from using [gill or entangling] nets without a State 'Pompano Endorsement[,]'" "prohibit the commercial harvest of federal pompano from the Gulf of Mexico EEZ outside of the [PEZ for Florida-registered vessels,]" and "impermissibly restrict the landing of pompano harvested from the Gulf of Mexico EEZ[.]" ECF No. [54] ¶¶ 12, 13; *id.* at 14. In his Response,

Plaintiff again cites to *Bateman* and *Martinez* to argue that the Florida Pompano Regulations violate the Commerce Clause.  ECF No. [71] at 16.  Defendant replies that *Bateman* is not supportive of Plaintiff's claim since that case did not have a commerce claim, and that *Martinez* is distinguishable because an FMP was in place. ECF No. [74] at 11.[4]

The allegations in the Amended Complaint are sufficient to set out a Commerce Clause violation in that Plaintiff alleges that the Florida Pompano Regulations restrict any ship, including in-state and out-of-state vessels, from landing pompano harvested in the EEZ at any Florida port north of Cape Sable and south of Hurricane Pass.  Defendant is correct that *Bateman* did not include a Commerce Clause claim, but Plaintiff's claim is sufficient to proceed here because he alleges that the Florida Pompano Regulations regulate interstate commerce on their face, since out-of-state vessels are prohibited from landing pompano harvested in the EEZ.  Moreover, the absence of an FMP in *Martinez* is not a persuasive reason for dismissal, as previously discussed.  Indeed, where a plaintiff has alleged that a facially discriminatory law burdens interstate commerce, courts are reluctant to dismiss such claims for failure to state a claim.  *See, e.g., Arnold's Wines, Inc. v. Boyle*, 515 F. Supp. 2d 401, 405 (S.D.N.Y. 2007), *aff'd*, 571 F.3d 185 (2d Cir. 2009)

---

[4]  In Defendant's Reply, he argues that Plaintiff impermissibly broadens his claim because the Amended Complaint initially took issue with "where EEZ pompano could be *landed*.  Yet in his Response, Plaintiff now tries to assert that his claim includes a challenge to where pompano can be *harvested*."  ECF No. [74] at 10 (emphasis in original).  However, as quoted *supra*, Plaintiff's Amended Complaint specifically alleges that the regulations prohibited him from the commercial harvest of pompano.

("Ordinarily, once a state law is shown to discriminate against interstate commerce either on its face or in practical effect, the burden falls on the State to demonstrate both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means.") (quoting *Maine v. Taylor,* 477 U.S. 131, 138 (1986)); *Liberty Disposal, Inc. v. Scott*, 648 F. Supp. 2d 1047, 1055 (N.D. Ill. 2009) (denying motion to dismiss and finding plaintiffs stated a claim under the dormant Commerce Clause where "[t]aking the allegations as true, the Court finds that the alleged conduct is discriminatory on its face, and thus subject to the *per se* rule").  As such, this claim should not be dismissed at this juncture.

### iv.  Plaintiff Has Adequately Pled Claims For Injunctive Relief.

To obtain a preliminary injunction, a plaintiff must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest." *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018).  Similarly, to obtain a permanent injunction, a plaintiff must show: "(1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that a permanent injunction would not disserve the public interest." *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).  "Courts are generally reticent to dismiss requests for injunctive relief at the pleading stage and have held that [a] claim for permanent injunction should not be stricken at the pleading stage when the underlying claim is not dismissed."  *Signify N. Am. Corp. v.*

*Robe Lighting Inc.*, No. 0:20-CV-62302-KMM, 2021 WL 3419187, at *3 (S.D. Fla. Mar. 16, 2021) (quotations omitted) (quoting *Oxygenator Water Techs., Inc. v. Tennant Co.*, No. 20-cv-358 (ECT/HB), 2020 WL 4572062, at *6 (D. Minn. Aug. 7, 2020)).

Defendant argues that "Plaintiff fails to state a claim because he has failed to allege any of the elements for either form of injunctive relief." ECF No. [64] at 20–21. Plaintiff does not respond to Defendant's arguments regarding failure to state a claim for injunctive relief. Defendant contends in his Reply that Plaintiff's failure to address Defendant's argument renders the defense admitted by default. ECF No. [74] at 11.

For the reasons discussed herein, Plaintiff has plausibly alleged claims of violations of the Equal Protection, Supremacy, and Commerce Clauses. Plaintiff seeks injunctive relief for the alleged violations, but injunctive relief is not a stand-alone claim itself. Rather, the requirements to obtain injunctive relief are relevant to the merits of an injunction and are not applicable to the pleading stage. Accordingly, Plaintiff has met his burden at this stage of the litigation to state a claim for relief. *See Signify N. Am. Corp.*, 2021 WL 3419187, at *3 ("Abundant authority states that so long as any portion of [the plaintiff's] underlying claim survives, [the defendant's] current motion [to dismiss] is an improper procedural vehicle for dismissal of [the plaintiff's] request for an injunction. Simply put, a claim for permanent injunction should not be stricken at the pleading stage when the underlying claim is not dismissed.") (quoting *Simplivity Corp. v. Springpath, Inc.*, No.

4:15-13345-TSH, 2016 WL 5388951, at *19 (D. Mass. July 15, 2016).  Again, given the procedural posture of this matter, the request for injunctive relief should stand.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss, ECF No. [64], be **DENIED.**

## V.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on January 25, 2022.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**